## Campe *v.* Horne et al., Appellants.

[Marked to be reported.]

*Married women—Purchase of realty—Act of June 3, 1887.*

Under the married persons property act of June 3, 1887, P. L. 332, a married woman may purchase land on credit, and give any kind of lawful lien upon it as security for the payment of the purchase money, or any part of it.

*Ejectment—Married women—Evidence—Weight of.*

In an action of ejectment to recover real estate claimed by a wife as her property, but sold under execution as the property of the husband, if there is evidence that the property was bought with the wife's money, the case should be submitted to the jury, without regard to the weight of the testimony.

In such a case it is proper to admit evidence of the cost of the building, as the jury should consider the question whether the wife furnished all the money; but evidence of the husband's insolvency, or of his indebtedness at the time of the purchase of the property, is irrelevant.

Argued Oct. 12, 1893. Appeal, No. 176, Oct. T., 1893, by defendants, Joseph Horne et al., partners, from judgment of C. P. Armstrong Co., June T., 1890, No. 136, on verdict for plaintiff, Margaret A. Campe. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Ejectment. Before RAYBURN, P. J.

At the trial, there was evidence to the following effect: Plaintiff derived title to the property by deed from her daughter, Mamie Campe Ewer, wife of James T. Ewer. The property had been sold at sheriff's sale as the property of James T. Ewer and had been bought in by his execution creditors, the defendants. There was evidence that Mrs. Ewer bought the lot from Joseph G. Beale. The deed was made to her, and she gave a mortgage to secure the purchase money. She subsequently borrowed $1,500, and built a dwelling house upon the lot. Her father afterwards gave her the money to pay off this loan, and her mother at various times gave her money which was applied towards the payment of the Beale mortgage. After the sale of the property by the sheriff, Mrs. Campe took a deed from her daughter, and brought this ejectment.

Under objection and exception the court refused offers of evidence of the indebtedness of James T. Ewer prior to the acquisition of title by his wife, to be followed by evidence showing possession of property prior to plaintiff's acquisition of the property. [5–7]

When Mrs. Ewer was on the stand she was asked how much the house cost her. Objected to; objection sustained, and exception. [8]

Defendants' points were as follows:

1. Request for binding instructions. Refused. [2]

" 2. There being no evidence of a separate estate in Mamie Campe Ewer, and the defendants being in possession at the time Mrs. Campe, plaintiff, acquired title, and the purchase of lots in suits from Joseph G. Beale by Mrs. Ewer being entirely on credit, and the only evidence in the case showing that the payments were made partly by her husband, and partly by borrowed money, the verdict should be for the defendants." Refused. [3]

Binding instructions for plaintiff were given. [1]

[The court also directed a verdict for plaintiff with six cents damages and six cents costs.] [4]

Verdict and judgment for plaintiff.    Defendants appealed.

*Errors assigned* were (1–4) instructions; (5–8) rulings on evidence; quoting instructions and bills of exceptions.

*James F. Robb, Orr Buffington* and *Ross Reynolds* with him, for appellants.—A purchase of real estate upon credit by a married woman, who has no separate estate and whose husband joins in the bond given for purchase money at a time when the husband is in failing circumstances, is as to the husband's creditors a purchase by him and liable for his debts, and the burden of showing a separate estate upon which to make such a purchase is upon the wife.    Prior to the married woman's act of 1887 this was undoubtedly the law as settled by many cases, ending in Pier v. Siegel, 107 Pa. 502; and if it is not the law now it must be by reason of some feature of that act.    There is certainly no clause in that statute which in direct terms changes this rule of law, and if it be there at all it must arise by inference from some provision, as, for example, a general power of contracting; but this court has decided in Real Estate Co. v. Roop, 132 Pa. 496, that a general power to contract is not given in the act of 1887.

The principle for which we are contending, however, does not depend primarily upon the want of power in a married woman to contract.    It has other and stronger reasons for its existence, namely, the prevention of fraudulent concealment of property by insolvent debtors: Kenney v. Good, 21 Pa. 354; Gamber v. Gamber, 18 Pa. 363 ; Topley v. Topley, 31 Pa. 328; Auble v. Mason, 35 Pa. 261 ; Hallowell v. Horter, 35 Pa. 375; Walker v. Reamy, 36 Pa. 410 ; Winter v. Walter, 37 Pa. 155; Rhoads v. Gordon, 38 Pa. 277; Robinson v. Wallace, 39 Pa. 129 ; Aurand v. Schaffer, 43 Pa. 363; Gault v. Saffin, 44 Pa. 307 ; Hoffman v. Toner, 49 Pa. 307 ; Flick v. Devries, 50 Pa. 266 ; Curry v. Bott, 53 Pa. 400; Seeds v. Kahler, 76 Pa. 262; Sixbee v. Bowen, 91 Pa. 149.

*M. F. Leason,* for appellee, cited : Milligan v. Phipps, 153 Pa. 208; Latrobe B. & L. Assn. v. Fritz, 152 Pa. 224; Abell v.

Chaffee, 154 Pa. 254; Adams v. Grey, 154 Pa. 258; McCormick v. Bottorf, 155 Pa. 331; Evans v. Evans, 155 Pa. 572; Jones v. Lewis, 148 Pa. 234.

OPINION BY MR. JUSTICE GREEN, November 14, 1893:

The chief contention of the appellants is that a married woman without a separate estate cannot buy property on credit. That this was the law before the act of 1887 cannot be doubted, but it is equally certain that it is not the law now. We have so frequently declared that the act of 1887 has worked a radical change in the contractual capacity of married women, that it ought to be unnecessary to repeat the declaration. In the case of Adams v. Grey, 154 Pa. 258, we sustained a purchase by a married woman of a stock of household furniture, on credit, and also a judgment confessed by her for a part of the purchase money.

In Evans v. Evans, 155 Pa. 572, we sustained her promissory note for money borrowed with which to buy a horse. In Mc-Cormick v. Bottorf, 155 Pa. 331, we sustained a judgment confessed by a married woman for a loan of money with which to pay off a debt contracted for repairs for her separate estate and for necessaries for herself and family.

In Abell v. Chaffee, 154 Pa. 254, we held a married woman bound by her judgment confessed for a loan of money with which to pay off a lien upon her land. We did the same thing in Latrobe v. Fritz, 152 Pa. 224, where the money was used to erect a building on her land.

In Milligan v. Phipps, 153 Pa. 208, we sustained a mechanic's lien against her for a building erected on her land, and we rested the decision as well upon the second clause of the first section of the act of 1887 as upon the third section. That clause reads as follows: " But every married woman shall have the same right to acquire, hold, possess, improve, control, use or dispose of her property, real or personal, in possession or expectancy, in the same manner as if she were a feme sole, without the intervention of any trustee, and with all the liabilities incident thereto, except as herein provided, as if she were not married." Prior to this act it cannot be doubted that a married woman might purchase land with her own money and take a perfectly good title to it if she paid the cash for it. Since

the act she is clothed with the same power to "acquire" property, real or personal, "as if she were a feme sole" and "with all the rights and liabilities incident thereto." Of course a feme sole could buy land upon credit, and give any kind of lawful lien upon it as security for the payment of the purchase money, or any part of it. This being so we see no reason why a married woman cannot do the same thing. The act of 1887 says, most plainly and explicitly, that she can, and we are not at liberty to say that she cannot, without violating the clear meaning of its language. We have not the least disposition to do anything of that kind. It is of no use to cite decisions made before the passage of this law, to show that this law is not to be obeyed. They were a consequence of the state of the law as it then existed, but that condition of the law is now abrogated, and a new condition prevails with new rights, new duties, new liabilities, new obligations, much more in accord with the teachings of common sense and practical justice than before. It is the plain duty of this court, and of all the courts of the commonwealth, to enforce the new law just as we find it, and according to its plain meaning and obvious intent.

On the trial of this case it became the duty of the plaintiff to sustain, by evidence, the title which she derived from her daughter, Mrs. Ewer. This required her to make the same kind of proof as would have been necessary if her daughter had been plaintiff instead of herself. This duty she undertook to perform, and she did give evidence, tending to show that the money which paid for the lot and house, was her daughter's money, not derived from her husband.

There was abundance of such proof in the cause, and the jury might well have found a verdict in her favor upon the testimony given. But it was the function of the jury to pass upon the testimony, and it should have been submitted to them for their action, with instructions that if they believed, upon all the testimony, that the money which paid for the lot and house, was the money of the wife, and was not derived from the husband, they should render their verdict for the plaintiff. The learned court however did not submit the testimony to the jury, but gave a binding instruction to find for the plaintiff. We are obliged therefore to sustain the first assignment of error, and send the case back for another trial, so that this error may

be corrected.   We also sustain the eighth assignment, as it was a proper subject of inquiry, to learn whether the wife furnished all the money required for the construction of the house, and in that connection it was the right of the defendants to inquire as to the cost of the building.   The remaining assignments are not sustained.   The fact that the husband was indebted was not relevant, though, if it were so, it would tend to support the contention of the plaintiff rather than that of the defendant.

Judgment reversed and new venire awarded.