# CHARLESTON.

CRIM v. HARMON (RUHL *et al, Interveners.*)

Submitted June 16, 1893—Decided December 6, 1893.

1. ATTACHMENT—AFFIDAVIT.

A case in which the law of attachment is discussed with reference to the affidavit, stating: (1) The nature of the plaintiff's claim. (2) The amount of the claim at the least; that is, the amount due after deducting all credits and proper counter-claims.

(3) The amount the plaintiff is "justly" entitled to recover; that is, justly, not only in regard to the absent debtor, but justly in regard to other creditors and persons interested.

2. ATTACHMENT—AFFIDAVIT.

The supplemental affidavit allowed by the latter part of clause 8, ¾ 1, c. 106. See Code (Ed. 1891.)

3. ATTACHMENT—INTERVENER.

A mere creditor at large of the absconding debtor is not a person interested in disputing plaintiff's claim, within the meaning of the term as used in section 23, c. 106, Code.

J. HOP WOODS for appellant cited 3 W. Va. 26; 5 Min. Inst. 674; Code, c. 106, s. 23; 3 Leigh 306; Wade Att. § 69; Dan. Att. § 20, 22, 27; Dra. Att. § 95; 22 W. Va. 645, 650; Hutch. Trea. § 1133, 1137; 21 W. Va. 211; Dra. Att. § 500; 10 W. Va. 130; 25 W. Va. 414; 32 W. Va. 66; Dra. Att. § 83, 113, 509; 26 W. Va. 322.

M. PECK for appellee cited 25 W. Va. 414; Code c. 106, s. 23; 1 Bar. Ch'y Pr. 585; 5 W. Va. 22; 8 W. Va. 274; 13 W. Va. 278; 28 W. Va. 195; 1 Bar. Ch'y Pr. 583; 45 Am. Dec. 305; 42 Am. Dec. 484; 26 W. Va. 300, Syll. 7; Id. 327; 7 Hayw. 97; Dra. Att. (7th Ed.) § 87*a*.

HOLT, JUDGE:

This is a suit in equity with attachment brought in Barbour Circuit Court on 26th October, 1891, by plaintiff Crim, against defendant, Harmon, for a negotiable note for nine hundred and eighteen dollars and seven cents, dated July 28, 1891, payable at Tygart's Valley Bank twelve months after date. The affidavit gives the nature of the plaintiff's claim and its amount; but it does not state "the amount at the least which the affiant believes the plaintiff is justly entitled to recover."

Among the grounds for attachment enumerated by the statute (section 1, c. 106) the affidavit sets out Nos. 2, 3, 5, and 6, not including No. 1, which is based on non-residence; also certain material facts relied upon by him to show the existence of the grounds upon which the application for the attachment is based. On February 15, 1892, without objection made, but by leave of the court (see latter part of clause 8, s. 1, c. 106, p. 742, Code, Ed. 1891) he filed a

supplemental affidavit. Appellants, Ruhl & Koblegard, claimed to be attaching creditors of defendant, Harmon, by attachment sued out before a justice on 29th October, 1891, three days latter. Appellants, claiming to be thus interested, filed their petition on February 23, 1892, by leave of the court disputing the validity of the plaintiff's attachment. On May 28, 1892, plaintiff Crim, defendant in the petition of the interveners, Ruhl & Koblegard, demurred to the petition, which the court sustained, giving petitioners leave to amend. Plaintiff, Crim, answered the original and amended petition, denying its sufficiency, and that petitioners were the owners, in any way, of the Cumberland Milling Company claim for two hundred and ninety six dollars and ninety two cents which was one of the two claims they set up against defendant, Harmon, the other being for fifty six dollars and seventy eight cents in their own name. The court had sold the attached property, and distributed all the proceeds among the attaching creditors of Harmon, except four hundred dollars, which it held to await the contest between plaintiff, Crim, and petitioners.

On the 23d day of December, 1892, the court heard the chancery cause of Crim v. Harmon, and the collateral petition of appellants, and pronounced a final decree, holding that there was no question of fact raised by the petition, proper for a jury; that plaintiff's attachment was valid from the filing of his amended and supplemental affidavit, on February 15, 1892; that petitioners failed to show any prior or equal claim to the fund; ordered their petition to be dismissed, and the sum of four hundred dollars in the hands of the receiver, to the credit of the cause, to be paid over to plaintiff, Crim, as a credit on his claim. From this the petitioners, Ruhl & Koblegard, have obtained this appeal.

1. The first question presented by the record, and argued by the counsel, is, was the attachment of J. N. B. Crim, the plaintiff, a valid one? And in this case this depends on two questions: (1) Was the original affidavit so defective as to require the attachment to be quashed, on motion of some one who had a right to make it? (2) If defective and

insufficient, was it cured and made good by the supplemental affidavit, taken as such, or was the supplemental affidavit good, as an original one, from the time it was permitted to be filed?

That part of the statute in question (see section 1, c. 106, p. 741, Code, Ed. 1891) is as follows: "When an action at law or suit in equity is about to be, or is instituted the plaintiff at the commencement of the action or suit or at any time thereafter and before judgment, may have an order of attachment against the property of the defendant by filing with the clerk of the court * * * his own affidavit or that of some credible person, stating (1) nature of the plaintiff's claim, (2) and the amount at the least, (3) which the plaintiff is justly entitled to recover. * * * See Hutch. Treat. § 1133; *Ruhl* v. *Rogers*, 29 W. Va. 779, 781 (2 S. E. Rep. 758). This is a plain, concise, and simple form of written oath, that he who runs may read. The appellee contends that his affidavit is good, although he has left out the term "justly."

The argument on behalf of appellee is: "The law entitles a party to recover only that which is just. Affiant says that, by law, he is entitled to recover this claim, as stated. Therefore, he has said, by necessary implication, that he is justly entitled to recover it." But this would soon involve the courts in the question as to what words of the statutory affidavit can be left out as unmeaning, or as already contained in other words by necessary implication, or what other words can be substituted as meaning the same thing; and to that extent their attention would be withdrawn from the merits of the case, and their time consumed in deciding such subtle questions as to words in the statute without meaning, words whose meaning, by necessary implication, is contained in other words; and synonymous words that may be safely substituted. And all this to enable persons to draft the affidavit without reading the statute. Public policy and general convenience forbid that any such perplexing burden should be cast upon the courts.

2. The history of the statute forbids any such loose construction. The formula for the affidavit is the result of

seventy five years of legislative consideration, passing through three revisals—that of 1819, 1849, and 1868—and it has been brought together, and methodized, shortened, and simplified, until that part has no superfluous or unmeaning words in it. Attention has thus been repeatedly directed to the terms "at the least," "just," "justice," "justly," for they have been substituted for each other; but instead of being left out, as idle or unmeaning, they have been introduced where they were not to be found before. See 1 Rev. Code 1819, c. 123, p. 474; Code 1849 (Ed. 1860) p. 645, c. 151; Report of Revisors of Code of 1849, p. 753, and note; Code 1868, p. 553, c. 106; *Id.* c. 50, s. 193; Acts 1882, c. 158, p. 514; Code (Ed. 1887) p. 722; *Id.* (Ed. 1891) p. 741.

3. Such loose construction of this statute is also wrong, and on principle, because attachments constitute an extraordinary remedy—harsh towards the defendant himself, and harsh in its operation towards the other creditors of the defendant, over whom the attaching creditor attains priority. It is liable to great abuse, and has often been greatly abused. The proceeding, therefore, is closely watched, and is never sustained unless all the requirements of the law have been complied with. *Claflin* v. *Steenbock*, 18 Gratt. 854; 4 Min. Inst. p't 1, p. 266. It has its origin in one of the immemorial customs of the city of London, and has been carried into all common-law countries, expanded and adapted to the circumstances, until it has become not only useful, but indispensable, and should not be discouraged by tolerating its abuse, but rather encouraged and advanced within its legitimate scope; and to this end it is not unimportant that no such relaxations be tolerated as tend to raise the class of questions here presented, of omitting from the affidavit words as unmeaning, or substituting for others their supposed equivalents; for there can be no valid writ or order of attachment without a sufficient affidavit, and no affidavit safely sufficient which, in language and scope of meaning, departs from the oath prescribed by the statute. The common-sense and convenient rule, therefore, is to take it as we find it, and not consume the time of the courts in verbal subtleties as to what word is the equivalent of

another, and what word includes another by necessary implication.

The case of *Magrath* v. *Hardy,* 33 E. C. L. 974, was tried in the court of C. P. in 1838, in which the question arose, what was this custom of London, and how was it to be shown? Ashley, one of the attorneys of the lord mayor's court of London, of twenty five years' experience as a practitioner of that court, was called as a witness by plaintiff, and he gave a full statement of the practice and proceedings by by foreign attachment. It is significant, in its bearing on the term "at least," that in that case the demand was one thousand pounds, but it was sworn to as five hundred pounds and upwards. See Locke, Attachm. 79, Law Lib. 56, where the affidavit says, "is justly and truly indebted in a certain sum (naming it as the sum due at the least) and upwards." See argument of counsel in *Thompson* v. *Towson* (Md. 1772) 1 Har. & McH. 504; *Evans* v. *Tucker* (1883) 59 Tex. 249. These qualifying terms prescribed by the statute are not idle and useless. First. An apparent indebtedness may be, in and of itself, too great, or not properly reduced by credits or proper counterclaims. It must be sworn to as the sum due "at the least." Second. Plaintiff's claim may be unjust, as against the absent debtor, or it may be fraudulent and collusive in his favor, as against other creditors. Therefore, the affiant must swear that he is "justly" entitled to recover with reference to others interested, as well as the absent debtor. See *Worthington* v. *Cary* (1858) 1 Metc. (Ky.) 470; *Bailey* v. *Beadles* (1870) 7 Bush. 383; *Ludlow* v. *Ramsey,* 11 Wall. 581; *Wilkins* v. *Tourtellott,* 28 Kan. 825.

On the question that the affidavit must state the amount of the claim over and above all sets-off or counterclaims, or, in this state, the minimum amount, by the use of the term "at the least," see *Morrison* v. *Ream,* 1 Pin. 244; *Lyon* v. *Blakesly,* 19 Hun 299; *Ruppert* v. *Haug,* 87 N. Y. 141; *Whitney* v. *Brunette,* 15 Wis. 61; *Wilson* v. *Arnold,* 5 Mich. 98; 1 Wade, Attachm. § 66. See, also, *Endel* v. *Leibrock* (1877) 33 Ohio St. 254–267; 2 Bart. Law Pr. (2d Ed.) § 221, p. 942. Hutchinson, in his West Virginia Treatise, we may infer, takes the same view from the tenor of our

cases. Hutch. Treat. c. 60, § 1127, p. 778; 4 Min. Inst. p't 1, p. 366.

Our conclusion, therefore, is, from our own, as well as other authorities on this point, that our statute authorizes an attachment as ancillary to the suit, but requires an affidavit to state (1) the nature of his claim ; (2) the amount, at the least, (3) which plaintiff is justly entitled to recover, in the language of the statute, or its equivalent, not simply to show, *prima facie*, the existence, the nature, and the apparent amount of the claim, but that he shall also have the fear of perjury before his eyes, on the point of putting the amount of his claim at its minimum amount, and not leave out credits and proper counterclaims, and, on the point that it is just—*bona fide*—that he should recover it; that it is not only *bona fide* as to others, but also as to the creditor, who is not present to contest the claim ; that he shall not, on his corporate oath, omit or forget to make it just in these particulars, giving the nature of his claim, and not merely its apparent amount, but the least amount—not only what, in good faith to the debtor, but to others, he is entitled to recover—"justly entitled to recover."

As a practical illustration on this point, let us suppose plaintiff makes and files an affidavit in the words of the statute, and willfully omits an important credit, or suppose it turns out that his claim is a fraud trumped up against the debtor, or a mere contrivance to shelter or protect him from his other creditors. Is it open to question that he is guilty of perjury—of perjury as distinguished in our statute (section 1, c. 147, Code) from false swearing? How can the term "at the least," indicating a cautious minimum after making all proper deductings, be omitted as immaterial, or as already implied, or the term "justly," comprehending, as it does, honesty and good faith to others, as well as to the debtor, in the statement of what he is entitled to recover, be omitted for the like reason ? Can we say that these terms may be left out, or, if needed, are to be found as necessary implications from other words, or to be gathered by inference from the affidavit as a whole, supplemented, if need be, by averments in the pleadings ? An indictment for perjury would fare badly, if that, as the gravamen, had

to be hunted out and pieced together from such necessary implications and outside averments—and yet any one may see that the sworn, written statement of these two things is the gist of the whole matter.

An amended or supplemental affidavit containing the word "justly" was filed during the progress of the suit. The court below proceeded on the theory that plaintiff's affidavit filed on the 15th day of February, 1892, charging among other things, that defendant, Harmon, was a non-resident of the state—a ground not needing the averment of any fact to support it—was from that date as a new affidavit in support of the pending attachment, or rather that on that ground it could be treated as an attachment from that date in the pending suit, for the statute authorizes an attachment at any time after the commencement of the action or suit before judgment.

This presents a different case from an amendment proper of the original affidavit, and may be good, as it would not be taken as a portion of the original, where it did not affect the rights or lien of any other prior attachment creditor or other person, as seems to have been the case in this instance. There are many cases, however, in which the original affidavit may be amended, such as mere clerical mistakes, and certain defects in form. The accidental omission of the officer who administered the oath to sign it at the proper time, when the affidavit is in proper form, and was actually made, will not vitiate the affidavit (*Bank v. Gettinger*, 4 W. Va. 305) or, at any time, to correct a mere clerical mistake (*Anderson* v. *Coal Co.*, 12 W. Va. 526). For a discussion of the question and full collation of cases, see *Barber* v. *Swan*, 61 ·Amer. Dec. 124 (from 4 G. Greene, 352). In most of the states it is regulated by statute; but as yet we have none on the subject. See Drake, Attach. (6th Ed.) § 87 *et seq.;* 1 Wade, Attachm. § 56; Wap. Attachm. 101–107; 1 Amer. & Eng. Enc. Law, 907.

In what cases, how, and to what extent, this cure by supplemental affidavit may be applied, is now prescribed by statute. See Code (Ed. 1891) p. 472, latter part of clause 8, s. 1, c. 106, which came in by amendment made in 1887.

It relates to the sufficiency of the material facts relied upon and necessary, in all cases of domestic attachment, to show the existence of the grounds upon which the application for the attachment is based, the evidential facts from which, if true, the court can say, as a matter of law, that the particular ground for attachment, *prima facie*, exists. It is as follows:

"But, upon objection to the sufficiency of such facts, the affiant shall have the right, within such time, not exceeding ten days, as may be prescribed by the court, in which the action or suit is pending, to file a supplemental affidavit, stating any other facts which may have come to his knowledge since the filing of the original affidavit, and which are relied on to show the existence of such grounds, and, when filed, such supplemental affidavit shall be taken as a portion of the original."

This should be so construed as to advance the remedy, and suppress the mischief intended to be remedied. By its language it is made to embrace suits in equity, as well as actions at law. Its first effect, so far as the evidential facts of the ground of attachment are concerned, would seem to be to render such affidavits not void, but only voidable by a direct proceeding to have it set aside. The material evidential facts relied upon to make, in law, a *prima facie* case of fraud or other ground of attachment, can not in the nature of the thing required be made the subject of uniform rule. Hence, the justice and importance of permitting that part of the affidavit to be supplemented in proper time and mode. And I should think that it is not necessary for the affiant to wait for objection to be made. He may in a proper case and with the permission of the court anticipate, as was done in this case, such objection, for the one includes the other, to the extent that the subsequent objector can not complain that the affiant by anticipation took away from him such ground of complaint. Such additional facts with which those in the original affidavit are thus supplemented must make it sufficient in law on this point; otherwise, it is still open to objection and abatement. But he must state that such additional facts have come to his knowledge since

the filing of the original affidavit; otherwise they would not be supplementary, and because the statute so prescribes, for the purpose of making the affiant state in the original all the material facts then known or remembered.

The supplemental affidavit filed in this case, and objected to, contains no such statement, but attempts to amend on a wholly different and foreign subject, viz. that plaintiff is justly entitled to recover, *etc.*, a subject not within the language or meaning of the law permitting the supplementary affidavit. The supplementary affidavit introduces for the first time the ground for attachment that defendant, Harmon, is a non-resident of this state, which does not need the statement of any other or evidential facts to show its existence, and if it had been good in other respects, following the short, plain, and simple formula prescribed by the statute, might have been made the basis of a new order of attachment, to be made effective from that time by leave of the court. This seems, as stated above, to have been the view taken by the court.

But the vital question remains: Do appellants show themselves to be persons interested within the meaning of the statute (section 23, c. 106) which permits any person interested to file his petition at any time before the property attached as the estate of the defendant is sold under the decree or judgment; or, if the proceeds· of sale have not been paid over to the plaintiff or his assigns, to file his petition within a year after such sale, disputing the validity of the plaintiff's attachment thereon, or stating a claim thereto, or an interest in or a lien on the same under any other attachment or otherwise? In the original petition disputing the validity of plaintiff's attachment their own claim is for fifty six dollars. and ninety three cents, as to which by itself this Court would have no jurisdiction, being under one hundred dollars. As to the claim of two hundred and ninety six dollars and sixty two cents against defendant, Harmon, in the name of the Cumberland Milling Company, there is no evidence in the record, of any kind, that petitioners have any interest in or title of any kind, except that they say in their petition that they are now the owners of both of said claims; but the Cumber-

land Milling Company are not parties to the petition or the suit as plaintiffs or defendants, but on the contrary the affidavit on the account made October 5, 1892, by John W. Cook, treasurer and superintendent of the Cumberland Milling Company, shows or tends to show that the claim then belonged to the company.

But, apart from this, petitioners, by their petition and exhibits filed therewith, show themselves to be mere creditors at large of defendant, Harmon. These exhibits profess to be summons and attachments against defendant, Harmon, and his estate, issued November 6, 1891, by a justice of Barbour county, returned as levied October 29, 1891, on the personal property, goods, and chattels of C. G. Harmon of Belington, Barbour county, W. Va. A list of the property levied upon is filed with the attachment of J. N. B. Crim against said Harmon, "now pending in the Circuit Court of Barbour county, which is referred to, and made part of the said ———." There was no affidavit for the attachment. Summons was awarded November 6, 1891, in each case, against defendant, Harmon, returnable same day, but never returned, whereupon the justice rendered judgments.

All this, of course, amounts to nothing, leaving them still general creditors of defendant, Harmon, so that the demurrer of plaintiff, Crim, to the petition, was properly sustained. In the amended petition there is no evidence of any kind that petitioners are owners, of any kind or in any way, of the claim in the name of the Cumberland Milling Company, but the exhibit tends to show the contrary. The milling company is not before the court, and the answer of Crim to the amended petition says that neither of said petitions is sufficient in law to entitle said petitioners to any consideration at the hands of the court; that no pretense is made to ownership or interest in the personal property sold under the attachment; and that petitioners are not, and never were, the owners of the pretended debt in the name of the Cumberland Milling Company. And by the record it still appears, after the filing of the amended petition, that Ruhl, Koblegard & Co. were only creditors at large of defendant Harmon, and that only as to the account of fifty six dollars and eighty seven cents in

their own name, without showing a shadow of a right, legal or equitable, by pleadings or otherwise, to the larger claim made up in the name of the Cumberland Milling Company.

It will be time enough to settle the rights of the milling company when they see fit to apply or intervene; and as to their own claim of fifty six dollars and eighty seven cents, if they stand in any other attitude to the fund in controversy than as creditors at large of defendant, Harmon, the matter in controversy is of less value and amount than one hundred dollars, so that this Court, on that point, would have no jurisdiction. Decree complained of affirmed.