## CHARLESTON.

### Dulin v. McCaw.

Submitted June 19, 1894.—Decided December 18, 1894.

1. CONSTRUCTION OF STATUTE.

The phrase *"in rem"* in the sixteenth section of chapter 66 of the Code of 1891 means *"quasi in rem,"* and the suit is *inter partes.*

2. ATTACHMENT—AFFIDAVIT.

An affidavit for an attachment under section 1 of chapter 106 of the Code, which omits the phrase "at the least," is not in substantial compliance with the terms of the statute, the phrase being neither superfluous nor insignificant. See *Altmeyer* v. *Caulfield*, 37 W. Va. 487 (17 S. E. Rep. 409).

3. ATTACHMENT—AFFIDAVIT—WAIVER.

The right to move to quash an attachment on the ground of an insufficient affidavit is not under section 19 of chapter 106 waived by appearance and filing an answer.

4. ATTACHMENT—SEPARATE ESTATE—MARRIED WOMAN.

The separate personal estate of a non-resident married woman may be proceeded against by suit in equity with order of attachment in the Circuit Court of the county, in which her separate personal estate is found.

5. LEX LOCI DOMICILII.

The law of the place where the suit is brought governs the remedy. This includes the mode of proceeding, the form of the judgment or decree and the modes of carrying them into execution.

6. LEX LOCI CONTRACTUS—SEPARATE ESTATE—MARRIED WOMAN.

The extent, to which a married woman may bind herself or her separate personal estate, is *prima facie* determined by the law of the state, in which the contract is made, it being also the place of her domicile.

LEONARD & ARCHER for appellant cited Code, c. 106, s. 1; 37 W. Va. 847; 18 S. E. Rep. 753; Acts, 1891, c. 109, s. 12, 16.

HOLT, JUDGE :

This is a suit in equity by foreign attachment brought in the Circuit Court of Wirt county on the 26th day of March,

1892, by plaintiff, B. S. Dulin, against Mrs. M. G. McCaw, a married woman residing in the state of Pennsylvania, but owning separate property situate in the county of Wirt. The attachment was issued and levied on certain personal property, oil-boring tools, *etc.;* and, plaintiff's bill being filed, defendant appeared and demurred thereto, which demurrer the court overruled, and on her motion on 20th October, 1892, the cause was continued, and she was given thirty days in which to file her answer.

On the 31st day of March, 1893, the defendant moved to quash the order of attachment for insufficiency of the affidavit, and next filed her answer to plaintiff's bill, and plaintiff replied generally ; and on the 7th day of April, 1893, the court entered a final decree, overruling the motion to dissolve the attachment, and entering a decree personal in form against defendant, from which this appeal is taken. Four errors are assigned : (1) It is a personal decree against a married woman. (2) It does not point out which part of her separate estate is sought to be subjected or charged with the payment of plaintiff's account. (3) It overrules defendant's demurrer. (4) It overrules defendant's motion to quash the attachment.

That the affidavit, on which the attachment was sued out, is insufficient, has been already decided in the cases of *Altmyer* v. *Caulfield,* 37 W. Va. 847 (17 S. E. Rep. 409) and *Crim* v. *Harmon,* 38 W. Va. 596 (18 S. E. Rep. 753) see, also, *Reed* v. *McCloud,* 38 W. Va. 701, 703 (18 S. E. Rep. 924) and the motion to quash it should have been sustained. The appearance of defendant and the passing by of the attachment, and the entering of her demurrer to the bill and the filing of her answer had the effect of waiving any defect in the taking or execution of the order of publication ; for she thereby submitted herself to the jurisdiction of the court; but it was not a waiver of her right to contest plaintiff's right to sue out the attachment, or to move to quash it for an insufficient affidavit, for the attachment is now used for other purposes of great importance to both the parties and to others interested, besides that of mesne process, to institute the suit and give the court jurisdiction, to that extent, of the cause. And this, I think, is the fair

construction of our statute. See section 19 and section 23 of chapter 106 of the Code.

If defendant had first moved to quash the attachment and stopped at that point, the court in no event would have had jurisdiction of her person; but the demurrer and answer put her personally within the power of the court to pronounce any proper decree. I think the bill does set out sufficiently a good cause of action, viz. a debt created by defendant for the wages of plaintiff, as a laborer, in drilling for a certain time on an oil well of defendant, *etc.*, and that the Circuit Court was right in overruling the demurrer.

The suit was instituted when chapter 66, as it is in the Code of 1891, was in force. The first part of section 16 is as follows: "A claim against the separate estate of a married woman for the payment of which she has charged the same shall be enforced only in a court of equity *in rem* and not *in personam.*" By the custom of London, which can be continuously traced back beyond the Norman Conquest (1066) a wife might carry on a trade, and in reference thereto could sue and be sued, as though she were a single woman. *Langham* v. *Bewett*, Cro. Car. 68; *Beard* v. *Webb*, 2 Bos. & P. 98; 1 Selw. N. P. 227; Bing. Inf. 260; Schouler. Husb. & Wife, § 89. Under the feudal system, her existence as the owner in fee of real estate was in many important particulars recognized and regarded; but as a freeholder she was, after the husband became tenant by the curtesy initiate, completely absorbed into the existence of her husband. About a century ago the court of chancery began to recognize her separate existence as the owner of property, and to regard her in a way as a *feme sole* and as such the owner of her own property with its incident of her right to dispose of it, when not expressly restrained; and because it was her property, it was chargeable with her debts as one of the incidents of property in general, and her creditors could make her pay them in a court of equity by a kind of equitable levy. By means of its exclusive power over trusts and the specific performance of contracts it was supposed to need no statute to enable such court to put it out of reach of the husband's creditors and beyond its control. To what end should she receive it if it is the

property of the husband the next moment? *Tyrrell* v. *Hope*, 2 Atk. 561.

At this stage our court of chancery took up and applied the doctrine of a married woman's separate estate. See *West* v. *West* (1825) 3 Rand. (Va.) 373; *Vizonneau* v. *Pegram* (1830) 2 Leigh, 183; *Woodson* v. *Perkins* (1849) 5 Gratt. 345; *Penn* v. *Whitehead* (1867) 17 Gratt. 503. See *Radford* v. *Carwile* (1879) 13 W. Va. 572, where there is a full review of the cases, and a learned discussion of the subject, by Judge Green. Thus, as to her separate property, she was regarded, *sub modo*, as a *feme sole;* that the *jus disponendi* and the liability of her separate estate to pay all her debts incurred during coverture both followed as incidents of such ownership, only to be restrained or taken away by express words or intent made equally clear and manifest.

Our first statute dealing with the separate property and rights of married women was taken from the New York statutes, and is found as chapter 66 of the Code of West Virginia of 1868 (page 447) and became the law on and after the 1st day of April, 1869. The first and fourth sections dealt with the equitable separate estate as it then existed. It enacted that it should remain her sole and separate property, as if she were a single woman, and should in no way be subject to the control of her husband, or be liable for his debts. It evidently contemplated the speedy extinguishment of such equitable separate estates and made all that came into existence after the 1st day of April, 1869, statutory; making it her sole and separate property, as if she were a single woman, subject to but one restraint, that she could not sell and convey her real estate without her husband joining in the deed or writing, unless she was living separate and apart from her husband—and applying it to women married after the 1st day of April, 1869, and to all property accruing after that date to women already married. If the action concerned her separate estate, she could sue and be sued as a *feme sole*, without joining her husband. In short, she owned with the powers of a *feme sole*, and could sue and be sued in relation thereto as a *feme sole*.

To this condition chapter 66 has substantially been brought by amendment and re-enactment by the act taking effect on the 16th February, 1893, and the act of 24th February, 1893 (see chapter 3, p. 6, and chapter 43, p. 157, Acts 1893) except that section 12, making her earnings her sole and separate property, is taken from section 14, c. 109, Acts 1891, now found in the present Code (Ed. 1891) as section 14 of chapter 66. But when this suit was brought, as we have seen, section 16, c. 66, Code 1891, was the law, which says that the claim against her separate estate shall be enforced only in a court of equity, *in rem* and not *in personam*. In what sense is the term "*in rem*" here used? We generally turn to courts of admiralty for examples of proceedings and judgments *in rem*, in the proper sense; for a suit in admiralty to enforce a maritime lien is not an action against any particular person to compel him to do or forbear something, but a claim against all mankind, a suit *in rem* asserting the claim of the libellant to the thing as against all the world—a method of procedure against the thing resorted to in that court to enforce a right in the thing, called a "maritime lien." It constitutes no incumbrance on the vessel, but becomes one only by virtue of an actual attachment. See 2 Jones, Liens, § 1676 *et seq.* Whenever the debt for materials *etc.* is by law—no matter what law or by what contrrct—a lien on the vessel, then the vessel may be proceeded against *in rem*, and in all cases the contracting parties may also be proceeded against *in personam*.

"A ship is, of necessity, a wanderer, visiting places where her owners are unknown. * * * These and other kindred characteristics of maritime commerce have established the necessity of making the ship herself security, in many cases, to those who have demands against the master or owners. All these are maritime liens, whether created by actual hypothecation, by implication, or by operation of law. It is a right affecting the thing, and giving a sort of proprietary interest in it, and a right to proceed against it to recover that interest. * * * Wherever there is a maritime lien upon property, it adheres to the proceeds of that property, into whose hands soever they may go, and

those proceeds may be attached in admiralty." Ben. Adm. (3rd Ed.) § 270.

"Suits and proceedings in admiralty are divided into two great classes—suits and proceedings *in rem*, and suits and proceedings *in personam*. Suits *in rem* are against the thing itself, and the releif sought is confined to the thing itself, and does not extend to the person. Suits *in personam*, on the other hand, are against a person ; and the relief is sought against him, without reference to any specific property or thing. In a suit *in rem*, unless some one intervenes and assumes the responsibilities of the controversy, the power and process of the court is confined to the thing itself, and does not reach either the person or other property of its owner. In a suit *in personam*, the court is confined to the rights aed liabilities of the person, and, in its execution, proceeds against his property generally, without any regard to its relation to the matter in controversy. *Id.* § 290.

In certain cases the proceedings *in rem* and the proceedings *in personam* may be united in the same suit, for the purpose of more complete justice. *Id.* § 359.

In the proceeding *in rem*, the decree can only dispose of the thing, but all the world are bound by the decree, because all the world are parties to the suit, in the sense of being duly notified by the seizure, called "serving the notice on the thing itself." *Id.* 361.

Where the proceedings are *in personam*, notice is served personally or by publication, and the decree binds only the parties and those claiming under them. See *Id.* § 364 *et seq.* It seems that a sale under a decree in admiralty discharges all prior liens under a state law, and the purchaser takes the property discharged of all incumbrances. 2 Jones, Liens, § 1811.

This brings us to that large class of cases, so common in courts of equity, for enforcing liens and charges by the sale of the property, as liens by mortgages and deed of trust, vendors' liens, judgment-liens, attachments against the property of non-residents, *etc.* But they differ among other things from actions which are strictly *in rem*, in that the interest of the defendant is alone sought to be affected,

that citation to him is required, and that judgment therein is only conclusive between the parties. These are called " proceedings *quasi in rem*," having certain marks of resemblance to proceedings *in rem*, which pre-suppose certain differences. See *Freeman* v. *Alderson*, 119 U. S. 187 (7 Sup. Ct. 165); *Bruff* v. *Thompson*, 31 W. Va. 16, 23 (6 S. E. Rep. 352); 2 Black, Judgm. § 793 *et seq.*; 2 Freem. Judgm. (4th Ed.) § 606 *et seq.*

What then is the class characteristic of judgments and decrees *in rem* proper, which differentiates them from the general class, which distinguishes them from other judgments ? Mr. Freeman, in his work on Judgments, says (section 606): " It seems to us that the true definition of a ' judgment *in rem*' is that it is an adjudication against some person or thing, or upon the status of some subject-matter, which, wherever and whenever binding upon any person, is equally binding upon all persons." That is, it is a judgment which being valid binds all persons.

A proceeding *in rem* is a judicial proceeding against the thing itself, which terminating in a valid judgment binds all the world. " It is a distinguishing peculiarity of a proceeding *in rem*, that the jurisdiction of the court in the particular case rests merely upon the seizure or attachment of the property. No personal notice to any individual is required. The *res* having been brought within the jurisdiction of the court becomes subject to its adjudication, and all parties interested are supposed to be duly apprised of the proceedings by the mere taking of the property or by the usual proclamation or published notice. This jurisdiction empowers the court to adjudicate the *status* of the *res* or to order it to be disposed of in a given way according to the object of the action. Of course it does not authorize the fastening of a personal liability upon any individual not personally served. A judgment *in rem* is conclusive and binding not only upon parties (if there are any) and privies, but also upon strangers—upon all persons interested. See *Freeman* v. *Alderson*, 119 U. S. 187 (7 Sup. Ct. 165) ; 2 Black, Judgm. §§ 793, 795.

Wherever there is a personal liability in a maritime cause of action, "personal action and injuries, which concern nav-

igation, the right may be enforced by a suit *in personam* in the admiralty. Whenever there is a maritime lien on a thing, the lien may be enforced by a suit *in rem* in the admiralty." The rules of the Supreme Court (Nos. 12 to 19) specify certain cases in which the suit is to be brought *in rem* or *in personam*, or both. And in cases not specified in those rules, generally, the proceeding *in rem* may be joined with a suit *in personam*. Ben. Adm. Pr. (3d Ed.) §§ 361, 362. In a suit *in rem*, it is not usual to render a decree *in personam*, but it is usual to give a decree the same form as *in personam;* and also, if the property be still in custody, to decree a condemnation and sale of the property, and that the proceeds be brought into court, or, if the property have been delivered on stipulation, then that the stipulators cause the engagement of their stipulation to be fulfilled within a certain time after notice of the decree, or show cause why a summary judgment should not be entered against them on their stipulation, and execution issue thereon. Ben. Adm. Pr. § 547.

There is a large class of proceedings which have some of the marks of a proceeding and judgment *in rem*, yet lack the class characteristic, that may be called "judgments and proceedings *quasi in rem*"—a term that marks resemblence, yet supposes difference (And. Law Dict.)—such as inquests of office, proceedings to determine forfeiture of land for non-payment of taxes, to enforce liens, *etc.* An inquisition of lunacy, resulting in a finding of lunacy, is conceded to be no more than *prima facie* evidence against third persons. *Rogers* v. *Walker*, 6 Pa. St. 373; *Den* v. *Clark*, 10 N. J. Law 217; Freem. Judgm. § 607. Therefore, it can not be called strictly *in rem.* An action replevin-detinue in this state can not be deemed *in rem*, for it is *in personam inter partes*, and the judgment binds only the parties and their privies.

In Maine certain proceedings to secure liens on logs are both *in rem* and *in personam*, and the court can not proceed until it takes the steps necessary to give it jurisdiction over the property as well as over the person of the alleged owners. Notice to the personal defendant (the debtor) is not sufficient, nor is an appearance by him or by persons

claiming to be the owners of the logs sufficient. It can not be known, that there are not others still, who have an interest in the property and a right to be heard. Hence, as already stated, such notice of the pendency of the suit must be given as in contemplation of law is notice to all the world. *Sheridan* v. *Ireland*, 66 Me. 138.

Whenever a proceeding though formally *in rem* is not such in fact, because it is directed against a particular claimant only, the judgment can not affect the interests of third persons. *Dean* v. *Chapin*, 22 Mich. 275; *Windsor* v. *McVeigh*, 93 U. S. 274; *Risley* v. *Bank*, 83 N. Y. 318; *Day* v. *Micon*, 18 Wall. 150; *Conrad* v. *Waples*, 96 U. S. 279. A number of actions and proceedings are sometimes spoken of as in the nature of proceedings *in rem*, which in truth are rather qualified proceedings *in personam* than proceedings *in rem*. Freem. Judgm. p. 1057, § 607; *Freeman* v. *Alderson*, 119 U. S. 187 (7 Sup. Ct. 165); Black, Judgm. § 793.

The proceeding in this case was by foreign attachment against the separate estate of a non-resident married woman. By the seizure of the property the court acquired jurisdiction over it, which will bind the absent debtor; but the judgment or decree must in its effect be restricted to the property before the court, unless the defendant appears; and even as to that property it is not conclusive upon the title except as between the parties to the action. It can have no binding effect upon strangers; and, no matter what the proceedings may be called, it is a proceeding *quasi in rem*, and not *in rem* pure and simple. Nor does the fact of its being against the separate estate of a married woman under section 16 of chapter 66 of the Code alter the nature of the proceedings in this respect. See Freem. Judgm. § 607a. The court could not have seized the property and sold it under the attachment without proceeding against her personally by order of publication as a non-resident, for to that extent the suit was a proceeding *in personam*, though no personal judgment, we will say for the present, could have been rendered against her, and nobody's title but hers could have been affected by any sale or other proceeding on the attachment, nor could the court have proceeded against her or her estate without the at-

tachment, for no other machinery had been provided for that-purpose; and, that an attachment lies, see *Powers* v. *Totten*, 42 N. J. Law, 442. All that the statute means is that it is a proceeding *quasi in rem* against her separate estate, and no personal judgment was to be rendered against her. Nor could any such judgment have been rendered against her on foreign attachment, even if she were *feme sole*, without her appearance in the suit. The sixteenth section of chapter 66 of the Code of 1891 is only declaratory. In *Stockton* v. *Farley*, 10 W. Va. 171, it was held, that the liability of her separate estate could only be enforced in a court of equity; and in *Hughes* v. *Hamilton*, 19 W. Va. 366, it was held, that the proceeding by bill in equity to subject her separate estate was in the nature of a proceeding *in rem*.

It appears by the affidavit of plaintiff, on which he sued out his attachment, that defendant is a non-resident of this state and a resident of the state of Pennsylvania, and that the contract, upon which he sues, was made with her there, and her separate property was by her there charged with the payment of the liability incurred by her to plaintiff for drilling the well *etc.* and, we may infer, was payable there. The general rule is that the validity of a contract is to be determined by the law of the state in which it is made. If it is valid there, it is deemed valid everywhere, and will sustain an action in the courts of a state whose laws do not permit such a contract; being only invalid, and not in itself wrongful. *Scudder* v. *Bank*, 91 U. S. 406; *Milliken* v. *Pratt*, 125 Mass. 374; *Robinson* v. *Queen*, 87 Tenn. 445, (11 S. W. Rep. 38.) The propriety of applying the law of the place where the contract must be taken to have been made is strengthened in this case, as it brings into operation the law of her domicile, to determine the nature and extent of the liability of her seperate personal estate for the payment of her debts.

By the Pennsylvania married woman's act of 3d of June, 1887, so general is the married woman's power to contract, that her inability is the exception rather than the rule. Her power of acquiring, holding and disposing of property seems to be just the same as if she were a *feme sole*.

The only restriction placed upon this emancipation from her common-law disability is, that she shall have no power to mortgage or convey her real estate unless her husband join in such mortgage or conveyance. See *Adams* v. *Gray*, 154 Pa. St. 258 (26 Atl. 423); *Abell* v. *Chaffee*, 154 Pa. St. 255 (26 Atl. 364); *Koechling* v. *Henkel*, 144 Pa. St. 215 (22 Atl. 808); *Association* v. *Fritz*, 152 Pa. St. 224 (25 Atl. 558). When a married woman has a separate estate, she may make any and all contracts that a party *sui juris* may make. *McCormick* v. *Bottorf*, 155 Pa. St. 381 (26 Atl. 545); *Campe* v. *Horne*, 158 Pa. St. 508, 511 (27 Atl. 1106); *Steffen* v. *Smith*, 159 Pa. St. 207, 210 (28 Atl. 295). From these cases and the statute of Pennsylvania of 3d day of June, 1887, it appears, that the old law as to the rights and liabilities of married women of that state has been abrogated, and a new condition thenceforward prevailed with "new rights, new duties, new liabilities, new obligations much more in accord with the teachings of common sense and practical justice than before." *Campe* v. *Horne, supra*, and so far as the point here involved is concerned, it is in accord with the law of this state, as appears by chapter 66 of the Code, as amended and re-enacted by the act of February 16, 1893, which went into operation sixty days before the decree here complained of was pronounced; so that if either one of these two laws applied, the personal decree of the Circuit Court was right, for by both she may be sued and decreed to pay the same in all cases, as if she were a *feme sole*, and of course a personal decree may be entered against a *feme sole*.

It is universally admitted and established that the forms of remedies and the modes of proceeding and the execution of judgments are to be regulated solely and exclusively by the law of the place where the action is instituted. See Story, Confl. Law (8th Ed.) § 556; Whart. Confl. Law, §§ 747, 749. As to what is remedy, see *Johnson* v. *Fletcher*, 54 Miss. 631. And where there are conflicting local laws more or less favorable respecting capacity, that may be preferred, by which the capacity is enlarged, see 3 Am. & Eng. Ency. Law, p. 519; Whart. Confl. Law, §§ 102, 104. It is also well settled that the

law, as amended—made better—may govern the remedy in the further progress of the suit, so far as it does not affect the right. This change in the law of procedure was remedial enlarging the plaintiff's remedy so as to allow a personal decree, which did not conflict with the defendant's right according to the law of her domicile and, as it has been held in a like case, did not conflict with her right, if it had been determined by the married woman's act (chapter 66, Code 1891) in force in this state, when this suit was commenced. See *Van Metre* v. *Wolf*, 27 Ia. 341. It relates to the form but does not affect the substance of the decree pronounced. *Morton* v. *Valentine*, 15 La. Ann. 153. See *Buckingham* v. *Moss* (1873) 40 Conn. 461. There is no injurious change in the time or manner of payment by the change in method of procedure.

Thus we see that in her own state a personal decree could have been given against her; and by the law of this state when the decree complained of was entered, the same thing could be done but not by the law, as it was, when plaintiff's suit was instituted; and a majority of the Court are of the opinion, that under the circumstances the law of the remedy, when the suit was commenced, ought to still govern, when the decree is pronounced. In that view, the decree ought to have added, "to be levied of her separate personal property proceeded against and attached," or something equivalent thereto.

The decree complained of must be amended sustaining defendant's motion to quash the attachment and adding to the decree the above qualification, and for that purpose the cause is remanded to be further proceeded in.