Scanlon v. Warren.

## Patrick Scanlon v. Benjamin Warren, Sr., and Benjamin Warren, Jr., partners as Warren & Co.

1. OPTION CONTRACTS—*The Intention of the Parties.*—In a suit on a contract which is defended on the ground that trades made in pursuance of the contract were violations of the statute against options, it is proper to refuse to allow the defendant to testify as to his intention when he made the contract. In such a case one party to the contract would not be affected by any secret intention of the other party, unless he knowingly participated in it.

2. SAME—*What are Not.*—By the rules of a Board of Trade, a purchaser of grain could make sales of as much grain as he had purchased, and the member of the Board of Trade making the sale or purchase would take the burden upon himself to see that the grain, when delivered on the first purchase, should be immediately turned over on the second purchase. *Held,* that the members took this responsibility as agents of the purchasers, the purchasers not being able to deal on the board of trade themselves, and that the provision could not be construed as granting an option to parties to receive or not to receive grain purchased.

3. SAME—*Burden of Proof.*—Where a suit on a contract was defended on the ground that sales made under the contract were violations of the statute against options, the burden of proof is upon the defendant to show that the contract was within the inhibition of the statute, or that the plaintiff was guilty of an intention to violate the statute by his dealings under the contract.

Assumpsit, on the common counts. Appeal from the Circuit Court of Peoria County; the Hon. THOMAS M. SHAW, Judge, presiding. Heard in this court at the May term, 1893. Affirmed. Opinion filed December 9, 1896.

McCULLOCH & McCULLOCH and DAN R. SHEEN, attorneys for appellant.

STEVENS, HORTON & ABBOTT and GEORGE B. FOSTER, attorneys for appellees.

MR. JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

This was the same case that was in this court on a former appeal by appellees, and our decision in the case will be found in 59 Ill. App., on page 138.

This court reversed the judgment of the court below, which at that time was in favor of the appellant here, mainly upon the facts of the case, holding that the facts in the case were not sufficient to sustain the finding of the court below on the evidence.

As will be observed, by reading the opinion in that case, the issues and evidence were substantially the same as on this trial.

The claim of the appellee here was for money advanced for appellant, on an agreement between them for the appellee to advance money for appellant to deal on the Board of Trade in Chicago, in wheat and corn, and the appellant failing to furnish the money, appellee was compelled to and did furnish to appellant large sums to pay losses on wheat bought by appellees as agents of appellant on the Board of Trade.

The appellees were not members of the Board of Trade in Chicago, and had no interest in the dealings between the members of the Board of Trade and appellant, but were residents of Peoria, Illinois, carrying on a grain commission business in the latter city; and appellant was also a resident of Peoria, and was a wealthy man, and made a contract along in February, 1892, with the appellees to buy grain for him and advance money, and they were to receive seven per cent interest for such advances.

The advances were made in accordance with the agreement, and paid for appellant on losses he sustained on the Board of Trade in Chicago.

The advances were generally made before, and none after, the dates appearing in the statement of account.

The statement of account which was attached to the declaration is as follows:

The losses on these wheat transactions are as follows:

| | | |
|---|---|---:|
| Ex. 33. | 5,000 bu. bo't November 23, sold May 19, 1892...... | $942.03 |
| Ex. 34. | 5,000 bu. bo't November 25, sold May 19, 1892...... | 866.89 |
| Ex. 35. | 5,000 bu. bo't December 28, sold May 19, 1892...... | 691.89 |
| Ex. 36. | 5,000 bu. bo't February 28, sold May 24, 1892....... | 412.58 |
| Ex. 37. | 5,000 bu. bo't March 1, sold May 24, 1892........... | 356.30 |
| Ex. 38. | 5,000 bu. bo't February 1, sold May 25, 1892........ | 312.55 |
| | Total on May, 1892, wheat.... ................. | $3,582.34 |

Scanlon v. Warren.

| | | |
|---|---|---|
| Ex. 40. | 5,000 bu. bo't May 25, sold July 28.................. | $293.62 |
| Ex. 41; | 5,000 bu. bo't May 24, sold July 29.................. | 266.51 |
| Ex. 42. | 5,000 bu. bo't June 1, sold July 29.................. | 69.64 |
| Ex. 43. | 5,000 bu. bo't May 24, sold July 29.................. | 266.50 |
| Ex. 44. | 5,000 bu. bo't May 19, sold July 30.................. | 253.75 |
| Ex. 45. | 10,000 bu. bo't May 19, sold July 30................ | 545.51 |
| | Total on July wheat.......................... | $1,595.53 |
| Ex. 47. | 10,000 bu. bo't July 29, sold September 2........... | $370.00 |
| Ex. 48. | 15,000 bu. bo't July 31, sold September 1........... | 573.75 |
| Ex. 49. | 5,000 bu. bo't July 28, sold September 1............ | 172.50 |
| | Total on September wheat..................... | $1,116.25 |
| Ex. 50. | 30,000 bu. bo't September 1 and 2, sold October 1... | |
| | Total October wheat..................... ...... | $678.73 |
| Ex. 51. | 30,000 bu. bo't October 1, sold December 1.......... | |
| | Total December wheat........................ | $1,410.00 |
| Ex. 52. | 30,000 bu. bo't December 2, sold April 3............ | |
| | Total for May................................... | $622.50 |
| Ex. 53. | 35,000 bu. bo't April 3, sold June 30................ | |
| | Total July..................................... | $3,297.50 |
| | Total loss on 30,000 bu. wheat.................. | $12,802.85 |

The balance of the account, after allowing appellant all just credits, was the amount of the verdict in this case, $12,230, upon which the court below rendered judgment. The verdict and judgment included the interest.

The purchases of wheat made by appellees for appellant were for May delivery, and made in 1891, and the February purchases were made in 1892, and amounted to 30,000 bushels, and it was kept for appellant until June 30, 1893, and appellees paid the bills of loss.

It was carried part of the time as cash wheat in the elevator at Chicago, but most of the time in the way of purchases for future delivery.

L. Everingham & Co. were the commission merchants who did most of the business for appellant on the Board of Trade in Chicago.

The money claimed in this suit is for the money lost on the 30,000 bushels of wheat first purchased.

All the purchases and sales were an attempt to "carry" the 30,000 bushels first bought.

The evidence tended to show that appellee was authorized to use his own judgment in "carrying" the grain for

appellant, and that he " carried " just the same that he would have done had it been his own. It was finally sold on the 30th day of June, 1893.

The panic was then on, and it would be delivered the next day, July 1st. Everingham & Co. could not pay for it and appellees could not, so they sold it, and appellees notified appellant of the sale right away. They carried the wheat as long as they could. It was in the midst of a serious panic and the money could not be secured at any rate of interest, and it was impossible to get it.

The wheat market, from the time they made the first purchase, then being at one dollar and one cent per bushel, was declining, except at intervals when there would be advances, and at no time was the market such that the wheat could be sold out without loss, and appellees' instructions from appellant were to sell when a sale could be made without loss, and appellant was receiving reports of the market right along.

The corn was sold without a loss to appellant, and an account of all the sales was sent to appellant by mail. The defense was based upon two propositions: That the sales and delivery of the wheat was a violation of the statute against options, and the second that they were gaming contracts at common law and that the sale of 30,000 bushels of wheat on the 30th of June was unauthorized. The question of fact as to whether these were gaming contracts as between appellant and appellee we will not again discuss.

This was entirely a question of fact for the jury, and we think the evidence was sufficient to justify the verdict in that particular, as well as to the authority of the appellees to sell the 30,000 bushels of wheat June 30, 1893.

On the former appeal we reversed the judgment of the court below based substantially on the same evidence, mainly because the finding of the court was against the weight of the evidence, it being then in favor of the appellant.

After a perusal of the evidence in this case we find no reason to change our opinion.

It is complained that the court erred in refusing to allow appellant to testify as to his intention when he employed

appellees to make the purchases and sales for him, whether he intended them as mere gaming contracts or whether he intended to deal in a legitimate, *bona fide* manner, and to actually receive and pay for the wheat he purchased and to actually deliver the wheat which he sold.

We think that the court properly ruled in rejecting this evidence. As between himself and appellees, appellees could not be affected by any secret intent of appellant unless they knowingly participated in it, and the only question for the jury was, under the evidence, as to whether the transactions, as carried on, were legitimate, and the secret intent of the appellant would throw no light upon it as far as the appellees were concerned. And the instructions on the same line that were offered and refused were properly refused.

As to instructions refused, informing the jury that they had a right to find facts from circumstantial evidence, they were not improperly refused. First, because the jury was instructed on that point, and second, the most, if not all, were misleading in their structure and some of them called attention to particular facts which would have had a tendency to mislead the jury.

The first, second and third of appellees' given instructions are not erroneous. We think there was no error in giving either of these instructions.

The first instruction ignores the fact (as is claimed) that the contracts themselves on the Board of Trade leave an option open to either party to receive or not to receive, to deliver or not to deliver, the grain. We do not understand that the proof tended to show any such option with the Board of Trade.

According to the rules of the Board of Trade a purchaser of grain could make sale of as much grain as he had purchased, and the member of the Board of Trade making the sale or purchase would take the burden upon himself to see that the wheat when delivered on the purchase should be immediately turned over on the sale. He simply took this responsibility as the agent of his employer, his employer not being able to deal on the Board of Trade himself. We do

not think such a rule could be twisted into an optional sale by any fair reasoning. If so, transactions under the rules of the Board of Trade would be in their nature *per se* gambling transactions, which we do not understand that any court has ever holden.

Instructions refused on this basis were, therefore, properly refused, and the refusal of the court to give appellant's sixth refused instruction framed on that basis was properly refused, there being no evidence on which to base it except the rules of the Board of Trade.

The giving of the third instruction for appellee was not erroneous in telling the jury that if either party contracted in good faith he is entitled to the benefit of the contract, no matter what may have been the secret purpose or intention of the other party. It is objected to this that while this would have been a good instruction as between buyer and seller it would have no relevancy as between principal and agent as in this case.

We are unable to see any distinction when applied to the facts of this case. Of course, the principal and agent as between the principal and a third party dealing with him through his agent, are held to the same knowledge and intent, but in a case like this, where the suit is based on a contract between the principal and agent himself to make contracts in behalf of the principal, and the contract which the agent is employed to make, in itself may be legitimate, and the agent makes it in good faith, it certainly would be a very unjust rule of law for the principal to avoid such contract on the ground that he had a secret intention that it should be a gaming one, and of which his employer had no notice, and as a matter of fact did not participate intentionally in carrying on an illegal transaction. The appellee would not be in such case *in pari delictu* with the appellant. He would not, therefore, be barred of his action. We are of the opinion there is no such law as contended for by appellant. If appellees made a contract with Everingham & Co., which was void under the statute, they might then be participants in an illegal contract which, no doubt, they would be responsible for, but in that case they could not be

regarded as acting in good faith, as the instruction required them to do, but as we have said before, we see no legitimate evidence tending to show an option contract.

The second of appellees' given instructions was not erroneous, as will be seen from what we have said in regard to the first and third, and especially the third, as it covers substantially the same point.

The sixth of appellees' given instructions is complained of because the instruction throws the burden of proof to show that the appellees were guilty of an intention to violate the statute, upon the appellant; we think it was not erroneous.

Taken all together, this instruction seemed to be fair and according to law. Of course, if the appellees' evidence of itself showed that the contract was illegal there would be nothing in it to rebut; but as a general rule of law, the burden of proof is upon the defendant to show its illegality, and the latter part of the instruction makes it plain enough what is meant.

And the appellant's second and third instructions, and his instructions generally, base the decision of the case upon the preponderance of the evidence, taken as a whole; that of the appellees, as well as the appellant; and the jury could not possibly have been misled by the appellee's sixth instruction, even if some theory of preponderance of evidence had been violated by it.

We see no error in the giving or refusing of any other instructions. The case in all respects seems to have been fairly tried, and justice seems to have been done according to the law and evidence.

The judgment of the court below is therefore affirmed.