## WASHINGTON COUNTY.

LUCIUS D. BROWN *vs.* PERRY E. BROWNING.

A statute of Connecticut prohibits secular business on Sunday between sunrise and sunset. A statute of Rhode Island prohibits business in one's ordinary calling during the whole day of Sunday.

*Held*, that a contract made in Connecticut in the plaintiff's ordinary calling after sunset on Sunday could be enforced in Rhode Island.

Such a contract is not against good morals, was valid where made, and can be enforced by process recognized in this State.

*Hayden* v. *Stone*, 13 R. I. 106, distinguished.

EXCEPTIONS to the Court of Common Pleas.

*Providence, December* 9, 1886. STINESS, J. The only question raised by the bill of exceptions is, whether a suit can be maintained in this State upon a contract made in Connecticut on Sunday after sunset. The statute of Connecticut, as proved in this case, prohibits secular business on Sunday between sunrise

and sunset, Gen. Stat. Conn. 1875, p. 521, differing in this respect from our statute, which covers business of one's ordinary calling during the entire day. The plaintiff and defendant exchanged horses and wagons after sunset on Sunday, January 28, 1884, this being in the business of the plaintiff's ordinary calling, and the note in suit was given for " boot money " due to the plaintiff. The general rule is that a contract which is valid where it is made is valid and may be enforced everywhere. Among the recognized exceptions to this rule, only two need to be considered in this case, viz., when the contract is against good morals, and when its enforcement would violate the law of the place of suit. We do not think the contract in this case falls within these exceptions. The contract was valid in Connecticut, where it was made, because it was not in violation of the law of that State. The making of the contract did not violate the law of this State, because it was not done in this State. Neither does its enforcement conflict with any law of this State in regard to remedy. Was the making of the contract in Connecticut so far against good morals that it ought not to be enforced in this State ? We do not think that it was. The statute of 29 Charles II. cap. 7, which has been generally followed in this country, prohibited work of one's ordinary calling on Sunday. The law of Connecticut prohibits travel, sport, and secular business between sunrise and sunset, and concerts and other public diversions in the evening. Whether sunset is fixed as a limit because the Hebrew Sabbath, under the Mosaic law, ended at that time, or because such was the custom of the Puritan founders of the State, or because the hours between sunrise and sunset are those to which travel, sport, and secular business are chiefly and almost necessarily confined, we do not need to inquire. Evidently there may be a reasonable answer to an objection that the limit of the law is short of the limit required by good morals. Whatever may be claimed for the observance of the Lord's Day upon the ground of moral obligation, people who believe in ·keeping it very strictly would no doubt agree that the requirements of the Connecticut law have a tendency to promote, rather than obstruct, good morals. It does not follow, because our law covers all of the first day of the week, that the law of another state, which in one respect covers less, is

contrary to good morals. We do not even require the observance of this day from all of our own citizens. Believers in the Sabbatarian faith and Jewish religion are allowed to labor in their respective vocations on that day, and in certain places to open stores and carry on mechanical trades. Pub. Stat. R. I. cap. 244, § 18.

The precise question before us has been passed upon and so fully considered in *Adams* v. *Gay*, 19 Vt. 358, and *Swann* v. *Swann*, 21 Fed. Reporter, 299, that a review of the grounds upon which the decisions rest is unnecessary. In both of these cases it was held that a contract made on Sunday, in a state where it was valid, was not against good morals, and could be enforced. The defendant relies on the case of *Hayden* v. *Stone*, 13 R. I. 106, where it is said "that a contract valid by the laws of one state cannot be enforced in another state unless such a contract made between its own citizens could be enforced there; or, in other words, it depends on the *lex fori*." We do not think the court meant to make a rule as broad as this is claimed to be, and as, possibly, the language which is used may imply. The language must be applied to the case. There the suit was against a married woman, upon a note given by her and her husband in Massachusetts, where it was valid against both parties. Under our law a married woman is incapable of incurring liability upon a promissory note. The plaintiff in that case sought to subject her property here to attachment for the note, contrary to our law. There was no service on the husband. It was held that the wife could not be sued alone, and that her property in this State could not be held upon a contract the enforcement of which would interfere with our law. Our citizens could have no such remedy upon such a contract in this State, and therefore a citizen of another state could not have it here. The case was clearly within the exception we have stated. The reasoning of the court does not go to the validity of the contract, but to the remedy sought, and the remedy is always subject to the *lex fori*. The present suit violates no law of remedy, and hence is not within the decision in *Hayden* v. *Stone*.

Since, then, the contract sued upon was valid where it was made, and its enforcement does not involve a breach of good

morals, nor call for any remedy to which our own citizens would not be entitled, upon a valid contract, we think the plaintiff should have been allo,wed to proceed with his suit, and that the nonsuit was erroneous. *Exceptions sustained.*

*Crafts & Tillinghast,* for plaintiff.

*Thomas H. Peabody & Charles Perrin,* for defendant.