Fox, Respondent, vs. Postal Telegraph-Cable Company,
Appellant.

*March 11—March 30, 1909.*

*Contracts: Validity: Public policy: Enforcement: Comity: Telegraphs:
Stipulation against responsibility for negligence: Defense.*

1. Though it is a general rule that the *lex loci* governs as to the
   validity of a contract, yet comity does not require recognition
   or enforcement, either as a basis of attack or defense, of a con-
   tract which, though valid under the *lex loci*, contravenes the
   public policy of the state in which such recognition or enforce-
   ment is sought.

2. A stipulation against responsibility of a telegraph company for
   negligence in transmitting or delivering a message is contrary
   to the public policy of this state, declared both in judicial de-
   cisions and in sec. 1778, Stats. (1898); and in an action in the
   courts of this state based on such negligence a stipulation of
   that sort is not available as a defense, even though it was
   valid in the state where the contract was made and valid in
   the state where the message was to be delivered and where
   the tort in failing to deliver it promptly was committed.

Appeal from a judgment of the circuit court for Dane
county: E. Ray Stevens, Circuit Judge. *Affirmed.*

Action for damages for negligence respecting delivery of a
telegram.

These facts were stated for a cause of action: Defendant, a
New York corporation, at the city of New York, December
19, 1906, at about noon, Eastern time, received from plaint-
iff a message to be transmitted by its telegraph system to a
person in the city of Chicago, at 100 Washington street, for
the purpose of avoiding having such person make a useless
trip from such city to the city of New York, as he contem-
plated doing, starting on the 2 o'clock p. m., Central time,
train on such day. The message was important, which fact
defendant was duly notified of at the time it was delivered
for transmission. Defendant was also fully informed of the
necessity of the message reaching the person to whom it was
addressed before the leaving time of such train on such day.

Had the message been expeditiously transmitted and delivered, it would have been received by the person to whom it was addressed, before 12 o'clock noon, Central time, December 19th aforesaid, and in ample time to have prevented the addressee from starting on the journey to New York. It was received at defendant's office at the Palmer House in Chicago at forty-six minutes past eleven a. m., Central time, on the day it was sent, but was not delivered at the place to which it was addressed until noon of the next day. By reason thereof the addressee started and made the journey to New York when he otherwise would not have done so, to the damage of the plaintiff in the sum of $157.37.

Defendant for a defense pleaded, among other things, that plaintiff wrote his message on one of defendant's ordinary blanks containing on the face this language:

"The *Postal Telegraph-Cable Company* . . . transmits and delivers this message subject to the terms and conditions printed on the back of this blank. . . . Send the following message, without repeating, subject to the terms and conditions printed on the back hereof, which are hereby agreed to."

The indorsement contained this language:

"To guard against mistakes or delays, the sender of a message should order it REPEATED; that is, telegraphed back to the originating office for comparison. For this one-half regular rate is charged in addition. It is agreed between the sender of the message written on the face hereof and the *Postal Telegraph-Cable Company,* that said company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery of any UNREPEATED message beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for nondelivery of an UNREPEATED message beyond fifty times the sum received for sending the same, unless specially insured. . . ."

Plaintiff did not request to have the message repeated nor to have it insured. The sum paid for the service was forty cents.

The case turned on whether the language of the indorsement was binding upon plaintiff as a part of his contract with defendant respecting the transmission and delivery of the message. In respect thereto the trial court decided in plaintiff's favor, and also found all matters of fact set forth in the complaint, and held, by reason thereof, that plaintiff was entitled to judgment as prayed for in the complaint.. Judgment was accordingly rendered.

For the appellant there was a brief by *Tenneys, Hall,. Davies & Sanderson,* and oral argument by *F. W. Hall.* They contended, *inter alia,* that the stipulation upon the back of the telegraph blank used by the plaintiff was a binding contract. *Kiley v. W. U. Tel. Co.* 109 N. Y. 231;. *Ayers v. W. U. Tel. Co.* 72 N. Y. Supp. 634; *Riley v. W. U. Tel. Co.* 26 N. Y. Supp. 532, 28 N. Y. Supp. 581; *Breese· v. U. S. Tel. Co.* 48 N. Y. 132, Allen's Tel. Cas. 663, 680; *Halstead v. Postal Tel. C. Co.* 104 N. Y. Supp. 1016; *Halstead v. Postal Tel. C. Co.* 193 N. Y. 293; *Shaw v. Postal· Tel. & C. Co.* 79 Miss. 670, 56 L. R. A. 486. It is not true that the courts of Wisconsin will not enforce a valid contract of another state which is contrary to the provisions of the law of this state. If such a contract in fact is not *contra bonos mores* it may be enforced if properly pleaded and proved. *Hull v. Augustine,* 23 Wis. 383; *Schoenberg v. Adler,* 105 Wis. 645, 649; *Brown v. Am. F. Co.* 31 Fed. 516. This court has sustained a contract made in another state with respect to usury, although against the policy and the express statute of Wisconsin. The transmission of the telegram in question was business done outside of the state, by contract made outside of the state, and was entirely to be performed outside of Wisconsin, and is not governed by the public policy of Wisconsin nor the express law of Wisconsin, since it is a New York contract and falls within the approval of the public policy of the United States relative to. the control of interstate commerce. *W. U. Tel. Co. v. Pendle-·*

*ton,* 122 U. S. 347; Joyce, Electric Law, § 128; *Rixke v.*
*W. U. Tel. Co.* 96 Mo. App. 406, 70 S. W. 265; *Primrose v.*
*W. U. Tel. Co.* 154 U. S. 1; *W. U. Tel. Co. v. Coggin,* 68
Fed. 137; *Hartford F. Ins. Co. v. C., M. & St. P. R. Co.*
62 Fed. 904, 906.   The rights of the parties to the con-
tract and the terms of the recovery for damages due to neg-
ligent delivery in Illinois are governed by the terms of the
contract; and this is so whether the action sounds in tort or in
contract.   Wharton, Confl. of Laws, § 478, p. 1104; Cros-
well, Electricity, 407; *Clement v. W. U. Tel. Co.* 137 Mass.
463.

For the respondent there was a brief by *Olin & Butler,* and
oral argument by *H. L. Butler.*

MARSHALL, J.   It may be conceded for the purposes of
this case that the place of the contract between plaintiff and
defendant was New York and that by the law of such state
the provision on the back of the message was a valid part of
the agreement.   *Elwood v. W. U. Tel. Co.* 45 N. Y. 549;
*Breese v. U. S. Tel. Co.* 48 N. Y. 132; *Young v. W. U.*
*Tel. Co.* 65 N. Y. 163; *Kiley v. W. U. Tel. Co.* 109 N. Y.
231, 16 N. E. 75; *Pearsall v. W. U. Tel. Co.* 124 N. Y.
256, 267, 26 N. E. 534.   In connection with that, it must
be conceded, since the tort was committed in the state of Illi-
nois, the cause of action, such as there was, grew out of a
violation of the laws of that state.   But neither of such con-
cessions nor the fact, if it be fact, that an action on the
claimed liability could not be maintained in the courts of
New York or those of Illinois, settles the question of whether
it was proper for the courts of this state to entertain it.

It has long been settled here that such a provision as that in
question is void as contrary to public policy.   *Hibbard v. W.*
*U. Tel. Co.* 33 Wis. 558; *Candee v. W. U. Tel. Co.* 34 Wis.
471.   So we turn to this question: Can a contract which is so
contrary to the public policy of this state as to be void if made

here, be, nevertheless, judicially enforced here if valid in the state where it was made or breached?

The general rule is that a contract is governed by the law of the place thereof. If by such law it is valid, it is likewise valid everywhere. That, like most general rules, is not universal. It has exceptions. The doctrine, as to such exceptions, is stated in 2 Kent, Comm. (14th ed.) 458, to the effect that the courts of one state will not enforce contracts which, though valid in the place where made, contravene their policy. *Bartlett v. Collins,* 109 Wis. 477, 482, 85 N. W. 703.

The doctrine as to recognition of foreign contracts in the courts of a state, if valid by the laws of the home jurisdiction, rests in comity. Therefore, it must necessarily rest in sound judicial discretion to limit it, and its general limitations exclude those agreements which are injurious to public rights, or offend against public morals, or contravene public policy, or violate public law as recognized in the place of the forum. Many illustrations of this are found in the books, some of which are cited to our attention by counsel for respondent. *Chicago, B. & Q. R. Co. v. Gardiner,* 51 Neb. 70, 70 N. W. 508; *International & G. N. R. Co. v. Vandeventer* (Tex. Civ. App.) 107 S. W. 560; *Building & L. Asso. v. Griffin,* 90 Tex. 480, 490, 39 S. W. 656; *Northern Pac. R. Co. v. Kempton,* 138 Fed. 992; *Union L. & E. Co. v. Erie R. Co.* 37 N. J. Law, 23; *Comm. Mut. F. Ins. Co. v. Hayden,* 60 Neb. 636, 83 N. W. 922; *Pennsylvania Co. v. Kennard G. & P. Co.* 59 Neb. 435, 445, 81 N. W. 372; *Liverpool & G. W. S. Co. v. Phenix Ins. Co.* 129 U. S. 397, 9 Sup. Ct. 469; *Knott v. Botany Mills,* 179 U. S. 69, 71, 21 Sup. Ct. 30; *The Guildhall,* 58 Fed. 796; *The Glenmavis,* 69 Fed. 472; *The Kensington,* 183 U. S. 263, 269, 22 Sup. Ct. 102; Story, Confl. of Laws, §§ 38, 244.

An examination of those authorities will leave no doubt respecting the principle stated. Every state, within certain limitations not necessary here to indicate, has a constitutional right to establish its own peculiar policy. That may be done

by legislative enactment or by judicial conception and interpretation of the common law. When done its courts should, and always aim to, administer the public will by giving effect to such policy. "The general principle that the *lex loci* governs as to the validity of contracts is subordinate to and qualified by," as said by WHITE, J., in *The Kensington, supra,* the supreme principle which inheres in the very nature of sovereignty, that comity cannot set at naught the public policy of a country. Under that principle courts have uniformly regarded the public policy of the place of the forum as superseding the right of a defendant to the benefit of a defense which he might have at the place of the contract, but which is directly contrary to the public policy of the jurisdiction where it is sought to be enforced. That doctrine has, at times, been vigorously attacked as contrary to the constitution of the United States, but never successfully, and it has been nowhere more uniformly applied than by the federal supreme court.

What has been said, necessarily, disposes of this appeal in favor of respondent. The stipulation against responsibility for negligence, as we have seen, would be void in a Wisconsin contract by the settled unwritten law of the state supposed to be reasonably necessary for the protection of our citizens and all persons submitting to our laws or invoking their aid through the instrumentality of our courts. It would not only be void by state policy, judicially declared, but by the written law as well. Sec. 1778, Stats. (1898), provides that "any person, association or corporation operating or owning any telegraph or telephone line doing business in this state shall be liable for all damages occasioned by the failure or negligence of their operators, servants or employees in receiving, copying, transmitting or delivering dispatches or messages." Therefore, the courts will not lend their aid to enforce such a stipulation, regardless of where made, either as a basis for attack or defense.

*By the Court.*—The judgment is affirmed.