INTERNATIONAL HARVESTER COMPANY OF AMERICA, Appellant, vs. McADAM, imp., Respondent.

*February 4—February 22, 1910.*

*Contracts: Validity: Construction: What law governs: Intention of parties: Enforcement in other states: Comity: Public policy: Married women: Accommodation notes.*

1. As to mere personal contracts, their validity and interpretation is referable to the *lex loci contractus*, unless the parties intended they should be governed by the *lex loci solutionis* or that of some other place, the real place of the contract being a matter of mutual intention, except in exceptional circumstances evincing a purpose in making the contract to commit a fraud on the law.

2. What the intent was, mentioned in No. 1, as to the place of the contract in any case, is generally determinable by presumption of fact that the place of the contract was intended to be that where it was actually made, unless the place of performance was elsewhere, then the presumption is that the latter was intended, but such presumptions are rebuttable. In this the term "place of the contract" means the place mutually intended for reference as to validity and interpretation.

3. The law as to manner of performance is referable to the place of performance, while remedies for nonperformance are referable to the law of the forum where performance is sought to be enforced.

4. A contract valid by the law of the place thereof is valid everywhere.

5. The affording of remedies in one country for enforcing a contract which would not be valid if made in such country, but is valid by the law of the place where it was made, depends upon judicial comity of nations.

6. The comity mentioned is uniformly extended unless such contracts as the one sought to be enforced are contrary to the public policy of the country of the forum, as declared by its courts or its lawmaking power on grounds of good morals, or the state or its citizens would be injured.

7. The scope of the comity spoken of, within reasonable limitations, is determinable, as a matter of judicial policy, by each state for itself.

8. The rule that the law of a place of a contract governs, as to its validity and interpretation, applies to the capacity, including that of married women, to contract.

International Harvester Co. v. McAdam, 142 Wis. 114.

9. The rule that a contract, valid by the law of the place thereof, is valid everywhere, is without exception, notwithstanding in some cases a foreign contract is not enforceable.

10. A foreign contract, of a class which if it were made in the country of the forum would be contrary to the law thereof, is not necessarily unenforceable in such forum because such a contract is contrary to public policy. To be so, the contract must be, by moral standards in the judgment of the court, pernicious and injurious to the public welfare.

11. The contract of a married woman as accommodation maker of commercial paper having not been judicially declared unenforceable in this state on grounds of public policy, nor prohibited by legislation as pernicious, is enforceable in our courts, in case of its having been made in another state where such contracts are valid, unless such contracts are, in fact, inherently bad in the sense indicated in the foregoing rules.

12. The general legislative policy of this state as to relieving married women from common-law disabilities to contract, and other considerations, negative the idea that full right in that regard would involve anything inherently bad and warrant our courts in refusing to enforce the foreign contract of a married woman as accommodation maker of a promissory note on grounds of public policy.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Jefferson county: GEORGE GRIMM, Circuit Judge. *Reversed.*

Action to recover on a promissory note against *Gertrude McAdam,* a married woman, who signed, as accommodation maker, with her husband and another. At the time of such execution all the makers were residents of South Dakota and that was also the place of performance. When the action was commenced respondent and her husband were residents of Wisconsin. She pleaded, separately, incompetency to bind herself as an accommodation maker because of her being a married woman. By the law of South Dakota, she had such competency, while by the law of this state she had not.

The court held that the note could not be enforced against respondent in this state, because of incapacity of a married woman to so bind herself here, and, therefore, she was entitled to judgment dismissing the action as to her with costs, without

prejudice to plaintiff seeking a remedy elsewhere. Judgment was so rendered.

The cause was submitted for the appellant on the brief of *J. C. McMath* and *Herbert J. Piper,* and for the respondent on that of *Charles E. Williams,* attorney, and *Tullar & Lockney,* of counsel.

Counsel for the appellant cited 1 Wharton, Confl. of Laws (3d ed.) p. 279, § 118*b*, p. 275; 25 L. R. A. 178–181, note; 57 L. R. A. 513–527, note, 520; 46 Am. St. Rep. 454–457, note; 85 Am. St. Rep. 552–578, note; 51 Cent. Law Jour. 111–114, note; 54 Cent. Law Jour. 223–230; 3 Page, Contracts, § 1730; 9 Cyc. 676; 22 Am. & Eng. Ency. of Law (2d ed.) 1334; 26 Cent. Dig. p. 1679, § 273; *Brodnax v. Ætna Ins. Co.* 128 U. S. 236, 32 L. Ed. 445; *Sutton v. Aiken,* 62 Ga. 733, 741; *Wright v. Remington,* 12 Vroom, 48, 32 Am. Rep. 180; *Matthews v. Dickenson,* 73 N. Y. Supp. 190; *Garrigue v. Kellar,* 164 Ind. 676, 74 N. E. 523; *Marks v. Germania Sav. Bank,* 110 La. 659, 34 South. 725; *First Nat. Bank v. Mitchell,* 92 Fed. 565, 34 C. C. A. 542; *Freret v. Taylor,* 119 La. 307, 44 South. 26, 121 Am. St. Rep. 522; *Law v. Smith,* 68 N. J. Eq. 81, 59 Atl. 327; *Baer Bros. v. Terry,* 108 La. 597, 32 South. 353, 92 Am. St. Rep. 394; *Baer Bros. v. Terry,* 105 La. 479, 29 South. 886; *Robinson v. Queen,* 87 Tenn. 445, 10 Am. St. Rep. 690, 3 L. R. A. 214, 11 S. W. 38; *Bowles v. Field,* 78 Fed. 742; *Young's Trustee v. Bullen,* 19 Ky. Law Rep. 1561, 43 S. W. 687; *Robison v. Pease,* 28 Ind. App. 610, 63 N. E. 479; *Union Nat. Bank v. Chapman,* 169 N. Y. 538, 62 N. E. 672; *F. B. Hauck C. Co. v. Sharpe,* 83 Mo. App. 385; *Clark v. Eltinge,* 38 Wash. 376, 80 Pac. 556; *Armstrong, C. & Co. v. Best,* 112 N. C. 59, 17 S. E. 14, 25 L. R. A. 188, 34 Am. St. Rep. 473; *Ruhe v. Buck,* 124 Mo. 178, 27 S. W. 412, 25 L. R. A. 178, 46 Am. St. Rep. 439; *Young v. Hart,* 101 Va. 480, 44 S. E. 703; *First Nat. Bank v. Shaw,* 109 Tenn. 237, 70 S. W. 807, 59 L. R. A. 498; *Thompson v. Taylor,* 65 N. J. Law, 107, 46 Atl. 567; *Studebaker Bros. Co. v. Mau,* 13 Wyo. 358, 82 Pac.

2; *Southern Exp. Co. v. Owens,* 146 Ala. 412, 41 South. 752, 9 Am. & Eng. Ann. Cas. 1143; 1 Wharton, Confl. of Laws (3d ed.) p. 281; *Bank of Louisiana v. Williams,* 46 Miss. 618, 12 Am. Rep. 319; *Dulin v. McCaw,* 39 W. Va. 721, 20 S. E. 681; *Johnson v. Fletcher,* 54 Miss. 628, 28 Am. Rep. 388; *Morton & Hamner v. Valentine,* 15 La. Ann. 150; *Milliken v. Pratt,* 125 Mass. 374, 28 Am. Rep. 241; *Lamb v. Powder River L. S'. Co.* 132 Fed. 434, 439; 1 Case and Comment (November, 1894), "Comity as to contracts of married women;" *Fauntleroy v. Lum,* 210 U. S. 230; *Fox v. Postal T. C. Co.* 138 Wis. 648, 120 N. W. 399; *Bartlett v. Collins,* 109 Wis. 477, 85 N. W. 703; *Merrell v. Purdy,* 129 Wis. 331, 109 N. W. 82; sec. 2345, Stats. (Supp. 1906); 22 Am. & Eng. Ency. of Law (2d ed.) 1329.

The following cases were cited by counsel for the respondent: *Merrell v. Purdy,* 129 Wis. 331, 109 N. W. 82; *Kriz v. Peege,* 119 Wis. 105, 95 N. W. 108; *First Nat. Bank v. Shaw,* 109 Tenn. 237, 70 S. W. 807; *Ruhe v. Buck,* 124 Mo. 178, 27 S. W. 412; *Armstrong, C. & Co. v. Best,* 112 N. C. 59, 17 S. E. 14; *Thompson v. Taylor,* 65 N. J. Law, 107, 46 Atl. 567; *Studebaker Bros. Co. v. Mau,* 13 Wyo. 358, 82 Pac. 2; *Dulin v. McCaw,* 39 W. Va. 721, 20 S. E. 681; *Bank of Louisiana v. Williams,* 46 Miss. 618, 12 Am. Rep. 319; *Hayden v. Stone,* 13 R. I. 106; *Hanover Nat. Bank v. Howell,* 118 N. C. 231, 23 S. E. 1005; *Frierson v. Williams,* 57 Miss. 451; *Milliken v. Pratt,* 125 Mass. 374; *Fonseca v. Cunard S'. Co.* 153 Mass. 553, 27 N. E. 665; *Emery v. Burbank,* 163 Mass. 326, 39 N. E. 1026; *Fox v. Postal T. C. Co.* 138 Wis. 648, 120 N. W. 399; *Bartlett v. Collins,* 109 Wis. 477; *Rose v. Kimberly & C. Co.* 89 Wis. 545; *Filkins v. Nunnemacher,* 81 Wis. 91; *McClure v. Campbell,* 71 Wis. 350; *Van Steenwyck v. Washburn,* 59 Wis. 483; *Wight v. Rindskopf,* 43 Wis. 344.

MARSHALL, J. The appeal raises for decision this proposition: Is a married woman's contract as accommodation

maker of a promissory note, which is valid in the place where made, enforceable in the courts of this state, such a contract not being valid if made here? The proposition, in the main, is governed by a few quite elementary principles.

The first principle is this: As to mere personal contracts the law thereof as to their validity and interpretation, is that of the place where they were made; the *lex loci contractus,* unless the parties thereto intended that they should be governed by the law of the place of performance; the *lex loci solutionis,* or of some other place. That is, the place of the contract is, generally speaking, a matter of mutual intention, but the intended place, as determined by legal presumption in some cases and evidentiary circumstances in others, settles all questions as to the legal test of validity and interpretation. Such presumption, in the absence of evidence to the contrary, is that the place of making and performance, in a physical sense, is the place in a legal sense, but the place of performance when different from that of the actual making, is the place in such legal sense, subject to the presumption being rebutted by clear evidence of intention, this being again subject to some exceptions in case of intention to commit a fraud on the law, such exceptions being possible but rare and not concerned in the case in hand. *Davis v. C., M. & St. P. R. Co.* 93 Wis. 470, 67 N. W. 16, 1132; *Shores L. Co. v. Stitt,* 102 Wis. 450, 78 N. W. 562; *Bartlett v. Collins,* 109 Wis. 477, 85 N. W. 703; *Brown v. Gates,* 120 Wis. 349, 97 N. W. 221, 98 N. W. 205.

Another rule is this: The law of the place of performance regulates the matter in that regard, while matters respecting remedies depend upon the law of the forum. *Brown v. Gates, supra.*

A third rule results, logically, from those mentioned, viz.: A contract which is valid in the place thereof is valid everywhere.

A fourth rule is this: The law of one state having, *ex pro-*

*prio vigore,* no validity in another state, the enforcement of a foreign contract which would not be valid by the law of the forum where its enforcement is judicially attempted, depends upon comity which is extended for that purpose, unless the agreement is contrary to the public policy of the state of the forum, in that it is contrary to good morals, or the state or its citizens would be injured by the enforcement, or it perniciously violates positive written or unwritten prohibitory law; the extent to which comity will be extended being very much a matter of judicial policy to be determined within reasonable limitations by each state for itself. *Finney v. Guy,* 106 Wis. 256, 276, 82 N. W. 595; *Hunt v. Whewell,* 122 Wis. 33, 42, 99 N. W. 599; *Fox v. Postal T. C. Co.* 138 Wis. 648, 120 N. W. 399. In the last case cited, referring to *The Kensington,* 183 U. S. 263, 22 Sup. Ct. 102, the court said:

"Every state, within certain limitations not necessary here to indicate, has a constitutional right to establish its own peculiar policy. That may be done by legislative enactment or by judicial conception and interpretation of the common law," and we may add here of what is injurious to the welfare of the state or its citizens. " 'The general principle that the *lex loci* governs as to the validity of contracts is subordinate to and qualified by' . . . the supreme principle which inheres in the very nature of sovereignty, that comity cannot set at naught the public policy of a country."

A further rule is this: The doctrine that the law of the place of a contract governs as to its interpretation and validity, applies to the capacity of parties, including that of married women, to bind themselves in the manner attempted. Story, Conflict of Laws, §§ 103, 241; *Milliken v. Pratt,* 125 Mass. 374.

We may well say, in passing, that, while contracts which, though valid in the place thereof, are not enforceable in the country where enforcement is attempted for reasons above suggested, are often spoken of in text-book and other authorities, as exceptions to the rule that the validity of a contract is

referable to the place which the parties thereto at the time of making intended should be incorporated into it, they are not exceptions strictly so called. The rule in a technical sense is without exception. In practical effect, the rule of the forum supersedes it leaving the contract without remedy there to enforce it and, in that sense, void.

The last rule that need be stated is this: A contract under the foregoing is not, necessarily, contrary to the public policy of a state, merely because it could not validly have been made there, nor is it one to which comity will not be extended, merely because the making of such contracts in the place of the forum is prohibited, general statements to the contrary notwithstanding. In *Milliken v. Pratt, supra,* the court remarked substantially, even a contract expressly prohibited by the statutes of the state in which the suit is brought, if not in itself immoral (the term "immoral" being used in the broadest sense), is not, necessarily, nor usually, deemed so invalid that the comity of the state, as administered by its courts, will refuse to entertain an action under all circumstances to enforce it. There must be something inherently bad about it, something shocking to one's sense of what is right as measured by moral standards, in the judgment of the courts, something pernicious and injurious to the public welfare. In Greenhood on Public Policy at page 46, cited by counsel, the following rule is deduced from the authorities cited:

"When a contract is valid under the public policy of the state where made, it will be enforced in another state, although the same would by the statute laws of the latter state be void, unless its enforcement would exhibit to the citizens of the state an example pernicious and detestable."

It will occur to one, on a moment's reflection, that the last foregoing rule could not be otherwise, else the doctrine that a contract valid at the place where made is valid and, generally speaking, enforceable everywhere, would be wholly nullified as to foreign contracts which would not be valid if made in

the place enforcement is sought. The rule would be useless since, in every case of such a contract, it would never be enforceable except in the place where made. The correctness of the rule and the absurdity of the idea that every contract which, if made in the jurisdiction of the forum, would not be valid, cannot be enforced there, are so clear that we would hardly be justified in dealing with the numerous elementary principles, as above, leading up to the final solution of the proposition upon which this appeal must be grounded, were it not for the obvious fact that the case was decided below and the judgment is sought to be sustained here upon the theory, merely, that because such a contract as that in question would not be valid if made here, it necessarily cannot be enforced in our courts, though it is perfectly valid where it was in fact made, the court below and counsel supposing that the general principle stated in *Fox v. Postal T. C. Co.* 138 Wis. 648, 120 N. W. 399, necessarily applies to such a contract as the one in hand. There the contract was of the class regarded as pernicious in character and was one which, by the settled judicial policy of this state, is not enforceable in its courts.

Many illustrations might be given of instances of contracts made elsewhere, which would not have been valid if made in the state where judicial enforcement was attempted, including instances where the invalidity was referable to statutory prohibitions, being afforded by judicial remedies in the latter jurisdiction. Such as contracts providing for a rate of interest which would be usurious with penalizing consequences, even to the extent of forfeiture of principal and interest as to such a contract, if made in the law of the forum. *Fisher v. Otis,* 3 Pin. 78; *Richards v. Globe Bank,* 12 Wis. 692; *Newman v. Kershaw,* 10 Wis. 333; *Vliet v. Camp,* 13 Wis. 198; *Lyon v. Ewings,* 17 Wis. 61; *Maynard v. Hall,* 92 Wis. 565, 66 N. W. 715; *Miller v. Tiffany,* 1 Wall. 298, 310. Also a contract allowable by the statute of frauds where made held enforceable in another country where such a contract would be

void by the written law.   *Scudder v. Union Nat. Bank,* 91
U. S. 406.   The same is true of Sunday contracts.   *Brown
v. Gates,* 120 Wis. 349, 97 N. W. 221, 98 N. W. 205, 349;
Hammon, Contracts, § 260, and cases cited.   The illustra-
tions could be extended to many subjects, and contracts which
would, if made here, not be enforceable because extinguished
by the statute of limitations of our state.   The situations in-
dicated in the foregoing are entirely different from that in
*Fox v. Postal T. C. Co., supra; Wight v. Rindskopf,* 43 Wis.
344, and *Bartlett v. Collins,* 109 Wis. 477, 85 N. W. 703.
The dividing line, it will be seen, is at the point where in-
herent harmfulness commences.   The latter cases are on the
fatal side while the former are on the other.

From the foregoing it will be readily appreciated how a
conflict between the judicial holdings of different countries
might, as it has, create confusion respecting the proposition
under consideration.   There is opportunity for courts to be,
as they seemingly have been in some instances, misled by
looking only to the rule that a contract valid where made,
which if made in the place of the forum would be contrary to
law and so not enforceable, is likewise remediless, not regard-
ing that the rule is a mere exception, and quite a narrow one
at that, to the broader rule covering contracts in general, but
still greater opportunity for courts to take conflicting position
by reason of each being, to a very large extent, supreme in its
own jurisdiction as to what elements render a contract in-
herently harmful and so to what extent, by rules of comity,
the foreign law should be given effect.

The opportunities for conflict referred to have operated ef-
ficiently as to the proposition under discussion, as illustrated
by cases holding that, in the circumstances here, the married
woman's contract cannot be enforced (*Armstrong, Cator &
Co. v. Best,* 112 N. C. 59, 17 S. E. 14; *Thompson v. Taylor,*
65 N. J. Law, 107, 46 Atl. 567; *Hayden v. Stone,* 13 R. I.
106), while the great weight of authority is to the contrary

upon the ground that such a contract is not against the policy of the law in the sense that the term is used in testing whether the foreign law of a contract as to its validity can be enforced. On this very many citations might be given.   The following are but a very few of them: *Milliken v. Pratt,* 125 Mass. 374; *Ross v. Ross,* 129 Mass. 243, 246; *Garrigue v. Kellar,* 164 Ind. 676, 74 N. E. 523; *Baer Bros. v. Terry,* 108 La. 597, 32 South. 353; *Young v. Hart,* 101 Va. 480, 44 S. E. 703; *Baum v. Birchall,* 150 Pa. St. 164, 24 Atl. 620; *Young's Trustee v. Bullen,* 19 Ky. Law Rep. 1561, 43 S. W. 687; *Gibson v. Sublett,* 82 Ky. 596; *Robinson v. Queen,* 87 Tenn. 445, 11 S. W. 38; *Bell v. Packard,* 69 Me. 105; *Bowles v. Field,* 78 Fed. 742; *First Nat. Bank v. Mitchell,* 92 Fed. 565.

The industry of counsel resulted in bringing to our attention three judicial authorities to support the negative of the proposition under consideration which seem to be sufficiently in point to warrant noticing them.   Counsel cite other cases: *First Nat. Bank v. Shaw,* 109 Tenn. 237, 70 S. W. 807; *Ruhe v. Buck,* 124 Mo. 178, 27 S. W. 412; *Dulin v. McCaw,* 39 W. Va. 721, 20 S. E. 681; *Bank of Louisiana v. Williams,* 46 Miss. 618; *Studebaker Bros. Co. v. Mau,* 13 Wyo. 358, 80 Pac. 151, and the like.   They either in principle support *Milliken v. Pratt, supra,* and the numerous cases we have cited, or go upon the ground that in the particular instance merely the manner of enforcement of the contract was involved, which is governed by the law of the forum, or the contract, though made in the foreign state, related to real property in the state of the forum; was not a mere personal contract enforceable *in personam,* but one enforceable *in rem* and by an action in the nature of one *in rem.*   All these distinctions must be kept in mind.   Failure to do so has led some courts sometimes into awkward positions and at others worked great prejudice to parties.

The three cases cited by counsel to which we accord some significance, after careful research we are unable to add to,

from other jurisdictions, though there may be some. Such few are entitled to very little weight.

*Armstrong, Cator & Co. v. Best,* 112 N. C. 59, 17 S. E. 14, went upon the obviously erroneous theory that the law of the forum, as to the capacity of parties to contract, governs. That was stated without citation of authority, and it seems none of moment could have been cited. In a later case, *Hanover Nat. Bank v. Howell,* 118 N. C. 271, 23 S. E. 1005, the court made an effort to place its doctrine on a more logical ground. After all the court seems to have doubted the soundness of its position and rather invited legislative assistance for the purpose of avoiding it.

In *Hayden v. Stone,* 13 R. I. 106, the court approved the general principle that the validity of a contract is referable to the law of the place where made, but leaned to the idea that it does not extend to the capacity to contract, and concluded in any event that the question in the particular instance really considered the remedy, and, as there was none afforded in that state to its own citizens to enforce a married woman's mere promissory note, none could be afforded to a citizen of another state. The infirmity of the logic, when tested by elementary principles, is apparent at once, except so far as it was competent for the Rhode Island court, in the absence of any restraint in the written law, to establish the doctrine announced as the public policy of that state, if it saw fit.

In *Brown v. Browning,* 15 R. I. 422, 7 Atl. 403, the court seems to have endeavored to very much limit its former decision, suggesting, in effect, that it did not go upon the validity of the contract which was governed by the Massachusetts law where it was made, but to the particular remedy by attachment sought to be used.

*Thompson v. Taylor,* 65 N. J. Law, 107, 46 Atl. 567, dealt with a married woman's agreement to be bound as an accommodation maker, as in this case, in face of an express prohibitory statute forbidding such agreements. The court rec-

ognized the general rule declared in the leading case of *Milliken v. Pratt,* 125 Mass. 374, but concluded that the legislature having condemned such contracts as harmful, that established a public policy for the state precluding its courts from being used on grounds of comity to enforce such a contract, regardless of its being valid by the foreign law.

Little more need be said to reach a logical conclusion respecting the proposition before us. The contract, as to respondent, is valid, as conceded, by the law of the place where it was made. Therefore, it is valid here. Being so valid, appellant is entitled, as matter of right, by the universal comity by which the law of one country as to contracts in general, is recognized and enforced in the jurisdiction of the forum of another, if they are valid in the foreign jurisdiction, unless they fall within some exception in that regard. They do not, as has been seen, in that such contracts are condemned as pernicious and forbidden by our written law, as in New Jersey. They are not contrary to any public policy of this state heretofore, in the code of unwritten law, established by our court. If there is any ground for saying they are inherently harmful, it is referable, solely, to the ancient common-law rule of disability, the reason whereof reaching to the present, is but little more than a shadow, a rule which, in great part, was changed by legislation long ago. That such contracts are not to be regarded as inherently harmful, is evidenced by the fact that they are permitted by the written law of a large portion of the states and in most others legislation in that direction is progressive. It is further evidenced by the fact that they are recognized as not inherently bad by substantially all the courts of this country. The exceptions are not significant. This court, except as restrained by principle and the great weight of authority, is free to take its own stand, to declare for this state what shall be, in the particular situation, its public policy, till the source for written law shall have acted in the matter. The court cannot say that such contracts are against.

public policy merely because they have not the sanction of the common law as we have seen. The position of the court in *Fox v. Postal T. C. Co.* 138 Wis. 648, 120 N. W. 399, or any other court in a similar situation, has nothing to do with the case, unless the contract can be classified with contracts dealt with in such situations. How can the court say that it should be so classed, that it should be located within the broadest possible boundaries of the immoral, the inherently bad? Nearly all the common-law disabilities of women to contract have been removed. They can acquire and enjoy property and make all contracts necessary or convenient in that regard. They can, in equity, charge their property substantially at will. There is little left of a business nature which men can do that they cannot do. They have nearly all the rights of men, and some besides, and on all sides are making pressing claims with distinguished support for what is yet withheld not very firmly nor perhaps very logically. How can the ordinary business contract in question, so common among men of ordinary perceptions, be said to be contrary to any policy of this state heretofore, or which should now be, adjudged bad in the interest of good morals? We can give no answer to that consistent with respondent's position. It is considered there is none, and that the proposition under consideration must be answered in the affirmative. The decision appealed from is erroneous. The contract of respondent must be held as valid and enforceable here as in the place where it was made.

*By the Court.*—The judgment in respondent's favor is reversed, and the cause remanded with directions to amend the judgment against the codefendant so as to be against him and respondent as well.